# EXHIBIT A

9/03/81

C4001

AGREEMENT FOR CONSTRUCTION OF FIXED FACILITIES
(TRACK III)

THIS AGREEMENT, made and entered into this *17TH* day of
*SEPTEMBER*, 19 *81* , by and between the REGIONAL TRANSPORTATION
AUTHORITY, an Illinois Municipal Corporation, and the CHICAGO
AND NORTHWESTERN TRANSPORTATION COMPANY, a Delaware
Corporation.

In consideration of the mutual covenants contained in
this Agreement, the parties agree as follows:

1. Agreements to Perform and Pay for the Work. In
accordance with this Agreement, Railroad shall perform, and the
Authority shall pay for Railroad's performance of the Authority
Portion of, the work described in Appendix F.

2. Definitions. As used in this Agreement, the
following terms, when capitalized as in this Section, shall
have the following meanings:

Agreement--this Agreement for Construction of Fixed
Facilities and all appendices hereto, as from time to time
amended or modified pursuant to the terms hereof.

- 1 -

9/03/81

Authority--the Regional Transportation Authority.

Authority Portion--The portion of the total cost of a
Project which is allocated to the Authority and referred to as
the "RTA" in Appendix B.

Commuter Service--Railroad's Public Transportation
Services by rail within the Metropolitan Region.

Cost--the meaning thereof set forth in Section 7(e) as
modified by Section 5(e) and 5(f).

Eligible Cost--the meaning thereof set forth in Section
7(e).

Fixed Facilities--the facilities and related track,
signal, and electrical materials installed in accordance with
this Agreement.

Grants--the capital grant to be used for the Work made
by UMTA after approval of the Authority's application (Project
Nos. IL-03-0073 and IL-03-0085), and the capital grant to be
used for the Work made by IDOT after approval of the
Authority's application (Project Nos. CAP-78-110-Fed. and
CAP-81-163-Fed.).

- 2 -

9/03/81

IDOT--the Illinois Department of Transportation, and any division, subdivision, agency, administration, or unit thereof.

Metropolitan Region--the meaning thereof set forth in the Regional Transportation Authority Act.

Project--the Work described by a line item shown on Appendix B.

Project Account--the meaning thereof set forth in Section 7(f).

Project Costs--the sum of (i) the Eligible Costs incurred in performing the Work, including work done by Railroad, plus (ii) the cost to the Authority of any materials, supplies, or equipment furnished to Railroad with respect to the Work.

Public Transportation Services--the meaning thereof set forth in the Regional Transportation Authority Act.

Railroad--the Chicago and NorthWestern Transportation Company, a Delaware Corporation.

9/03/81

Retired Facilities--the meaning thereof set forth in
Section 10(c).

Service Agreement--the Purchase of Service Agreement
entered into by Railroad and the Authority on October 2, 1980,
but effective July 1, 1979, and any successor agreement under
which the Authority purchases Public Transportation Services by
rail from Railroad.

UMTA--the United States Department of Transportation,
and any division, subdivision, agency, administration or unit
thereof.

Use Period--the period beginning on the date on which
the Fixed Facilities are first used in revenue service and
ending on the later of the expiration of 20 years from such
date (except 10 years for frogs and switchpoints) or the end of
the actual useful life of the Fixed Facilities.

Work--the work to be performed under this Agreement
described in Appendix F.

Design and Construction--(a) The parties have agreed
that the documents governing the work shall be the designs,
surveys, plans, estimates (including manpower requirements),

-  4  -

9/03/81

working drawings and specifications referred to in Appendix F
hereof. The Authority may request reasonable changes in such
documents provided, however, that if Railroad does not concur
in all such requested changes, Railroad shall not be obligated
to perform, and the Authority shall not be obligated to pay
for, any of the Work. No change shall be made in such
documents without the prior written approval of the Authority.
These documents shall be the property of the Authority upon
receipt of them by the Authority.

(b) After all necessary Grant approvals have been
received by the Authority, and the Authority so notifies
Railroad in writing, Railroad shall itself or through its
subcontractors, as approved by the Authority based upon
applicable state or federal standards, commence, carry on,
perform and complete the Work in a timely fashion and in a
sound, economical manner, in accordance with standards
regarding materials and workmanship representative of the
railroad industry, and in accordance with the provisions of
this Agreement, the designs, surveys, plans, working drawings
and specifications approved by the Authority under paragraph
(a) of this Section, and all applicable laws and guidelines.
Railroad and its subcontractors shall comply with all
applicable provisions of federal, state and local laws,
regulations and requirements. Railroad shall also perform, or

9/03/81

cause to be performed, the Work in accordance with the estimates contained in Appendix B, except that if Eligible Costs exceed such estimates, the remedies of the parties shall be only as provided in Section 7(a).

(c) Railroad shall immediately notify the Authority of any change in conditions or local law, or of any other event, which may significantly affect its ability to perform any or all of the Work in accordance with the provisions of this Agreement.

(d) The Authority shall not be liable for any obligations or liabilities of Railroad, Railroad's contractors or its or their subcontractors to any person in connection with the performance of the Work pursuant to the provisions of this Agreement and notwithstanding the Authority's concurrence in or approval of the award of any subcontract or the solicitation thereof.

(e) Subject to the provisions of Section 5(b), with respect to any Work, the cost of which is allocated, as described in Appendix B, between Railroad and the Authority on the basis of relative usage for Public Transportation Services by rail within the Metropolitan Region, and freight or inter-city passenger service, Railroad agrees that it will perform or pay for or cause to be performed the freight and

- 6 -

9/03/81

inter-city passenger portion of such Work substantially contemporaneously with performance of the Public Transportion portion of such Work and that it will pay the Authority in accordance with the provisions of Section 5 hereof for the freight and inter-city passenger portion of materials which are purchased by the Authority not later than the date upon which payment from the Authority to the supplier thereof is due.


(f)  Upon 3 days prior written notice, Railroad shall allow the Authority to examine and copy such data, reports, records, contracts, subcontracts and other documents relating to the Work as the Authority may reasonably require.  Railroad shall retain intact, for three years following each


Project close-out, all Project documents, financial and payroll records and supporting documents.  A Project close-out shall occur when the Authority notifies Railroad of the results of the final audit of a Project and forwards the final reimbursement or, in the case of an excess reimbursement by the Authority, when any required refund of reimbursements has been received from Railroad by the Authority.  Close-outs shall be subject to any continuing obligations imposed on Railroad or incurred by the Authohority under this Agreement.

9/03/81

4. <u>Work Forces</u>. (a) Subject to the provisions of this Section, Railroad may elect to use its own forces or elect to hire one or more independent contractors or items of equipment to perform the Work. When Railroad elects to hire an independent contractor or item of equipment to perform any part of the Work and the contract price is $5,000 or less, expenses and costs under such contracts which are based on purchase prices that are unreasonably above the lowest available market price of products or services which meet the pertinent technical specifications at the time of purchase shall not be reimbursable expenses or Costs under this Agreement to the extent such purchase prices exceed the lowest available market price. When Railroad elects to hire an independent contractor or item of equipment to perform any part of the Work, competitive bidding procedures shall be followed when the contract price exceeds $5,000. The total amount of the specific service needed for performance of the Work shall be included for purposes of determining the applicability of this competitive bidding requirement and the $5,000 standard. With the prior written approval of the Authority, UMTA, IDOT, Railroad may hire an independent contractor, lease equipment or hire professional services without the use of competitive bidding procedures. The Authority shall approve or deny any request for such approval as soon as may be reasonably practicable under the circumstances.

9/03/81

(b)  When competitive bidding procedures are used,
Railroad shall request bids in accordance with the bidding
procedures of UMTA, IDOT and the Authority and shall submit its
bid documents to the Authority for the Authority's approval
prior to soliciting bids.  Railroad shall notify the Authority
of its intent to request bids, and of the names of contractors
to which Railroad proposes to send such requests.  Within 10
days after the invitation for bids is first published, the
Authority may require Railroad to solicit bids from additional
contractors.  A copy of all bids received in response to any
such request shall be submitted to the Authority for review
together with a recommendation by Railroad with respect to
award.  The Authority may direct Railroad in writing to reject
any or all bids received and to take new bids, or may approve
in writing the award of a contract or contracts.  No contract
shall be awarded without the prior written approval of the
Authority.  The Authority shall provide any directions to
Railroad concerning bid acceptance or rejection not later than
seven days prior to the date on which bids would by their terms
expire.

(c)  Every contract between Railroad and a subcontractor
shall be executed in such form as the Authority may approve,
and shall comply in all respects with applicable government
rules and regulations, including without limitation rules and
regulations of UMTA or IDOT.  The Authority's right to review

9/03/81

and approve the form of subcontracts shall, however, be limited
to the purpose of assuring compliance with law, applicable
government rules and regulations, and this Agreement. Unless
the Authority otherwise approves, each such contract above
$5,000 shall contain the provisions set forth in Appendix A.
Each contract of $5,000 or less shall contain Sections 5 A,
C, and D of the UMTA/IDOT Addendum for Material Procurement of
Appendix A in their entirety.

(d) Railroad shall perform on the site, with its own
staff, work equivalent to at least 10 percent of the total
amount of the construction work performed at the site under the
provisions of this Agreement.

5. Materials. (a) The Authority will purchase the
materials shown on the Materials List attached hereto as
Appendix F, and will cause them to be delivered to Railroad.
The Authority may purchase all or part of any materials not
listed on such Materials List which are required to perform the
Work, and will give written notice of its election to purchase
any such materials within 30 days after the later of the date
hereof or the date on which all documents necessary for the
Work are approved under Section 3 hereof. All such materials
shall comply with the most recent specifications for such
materials (as of the date of purchase) issued by the American

Railway Engineers Association and the American Association of
Railroads, and shall comply with the plans, designs, working
drawings and specifications approved by the Authority and
Railroad pursuant to Section 3 hereof. The Authority shall
obtain the Railroad's prior written approval of the technical
specifications for all such materials purchased by the
Authority prior to the actual purchase of such materials.
Railroad shall use such materials purchased by the Authority to
perform the Work. Information on the Cost of materials
purchased by the Authority shall be furnished in writing to
Railroad within 30 days after such purchase. Not later than 10
days prior to publication of the bid notice for such a
purchase, Railroad shall specify in writing the locations to
which materials to be purchased by the Authority are to be
delivered and the scheduled dates of such deliveries. The
Authority shall in its contracts with suppliers require
delivery of such materials to such locations on such scheduled
dates. Upon delivery of such materials, Railroad shall
promptly notify the Authority of such delivery, shall visually
inspect at the delivery site the materials for quantity, damage
and compliance with the standards described in this paragraph
and with any purchase agreement previously provided to Railroad
by the Authority for such materials, and shall notify the
Authority in writing within 15 days after delivery of any

9/03/81

non-compliance. Railroad shall not be required to test such materials as part of such inspection. No failure of Railroad to inspect, or inspect timely, or to discover any non-compliance shall constitute a waiver of, or estoppel of enforcement of, such rights as the Authority may have against its suppliers. Railroad and the Authority shall conduct such inspection jointly in any case where the Authority so elects.

(b) Railroad shall pay the Authority for the freight or inter-city passenger portion of materials purchased by the Authority not later than the date upon which payment from the Authority to the supplier thereof is due. The Authority will give Railroad not less than 30 days written notice of each such payment date. Payments to be made by Railroad hereunder shall not be set off against amounts payable to Railroad by the Authority under Section 7 hereof. Title to materials purchased by the Authority shall not pass to Railroad until Railroad has paid the Authority for the Railroad portion thereof. However, if materials purchased by the Authority (other than railroad ties) cannot reasonably be installed by Railroad during the calendar year in which such materials were purchased, Railroad shall pay the Authority for the freight or inter-city passenger portion of materials purchased by the Authority no later than September 1, 1982, and in such circumstances Railroad shall pay the Authority for the freight or inter-city passenger portion

9/03/81

of delivered materials purchased by the Authority the actual
cost of such delivered materials multiplied by the quotient of
the then most recent vendor's published price of delivered
materials at the time Railroad pays the Authority divided by
the actual cost of such delivered materials, provided, however,
that in no event shall Railroad ever pay to the Authority an
amount less than the actual cost of such delivered materials to
the Authority. In the event the vendor no longer quotes prices
on such material for any reason whatsoever, a similar vendor of
the same material shall be substituted; in the event there is
no vender quotating prices on the same material, a similar
vendor of comparable material shall be substituted. Any
portion of Railroad's payment in excess of the amount actually
paid by the Authority to its vendor shall be supplemental
payments to the Authority for storage and administrative costs
and shall not be construed to be a Cost under this Agreement
and shall not be a reimbursable cost or expense under this
Agreement for any purpose whatsoever, notwithstanding anything
contained in Appendix B or Section 7 of this Agreement to the
contrary. Railroad shall pay the Authority for the freight or
inter-city passenger portion of railroad ties purchased by the
Authority not later than the date upon which payment from the
Authority to the supplier thereof is due.

9/03/81

(c)  In the case of steel rail, Railroad shall pay the Authority as stipulated above in Section 5(b) except that the actual cost of delivered steel rail shall be multiplied by the quotient of the published price of such rail (or if such rail is not available, then by the price of comparable rail) quoted by the United States Steel Corporation at the time Railroad pays the Authority divided by the published price of such rail (or if such rail is not available, then by the price of comparable rail) quoted by the United States Steel Corporation as of the date of the invoice received by the Authority for steel rail.  In the event the published prices of the United States Steel Corporation are not available or cannot be utilized for any reason whatsoever, the published prices of Bethelem Steel Corporation shall be substituted for those of United States Steel Corporation for purposes of this paragraph.

(d)  To the extent the Authority does not purchase the materials required to perform the Work, Railroad shall purchase them.  No such purchases shall be made by Railroad without the prior written approval of the Authority or before the Authority and Railroad have both executed an amendment to Appendix B reflecting such purchases, unless the cost of the items being purchased is $5,000 or less.  When Railroad elects to hire an

- 14 -

9/03/81

independent contractor or item of equipment to perform any part
of the Work and the contract price is $5,000 or less, expenses
and costs under such contracts which are based on purchase
prices that are unreasonably above the lowest available market
price of products or services which meet the pertinent
technical specifications at the time of purchase shall not be
reimbursable expenses or Costs under this Agreement to the
extent such purchase prices exceed the lowest available market
price. Competitive bidding procedures shall be used when the
cost of such materials exceeds $5,000.  The total amount of a
specific material to be purchased by Railroad needed for the
performance of the Work shall be included for purposes of
determining the applicability of this competitive bidding
requirement and the $5,000 standard.  With the written approval
of the Authority, UMTA and IDOT, Railroad may purchase
materials without competitive bidding.

(e)  When competitive bidding procedures are used,
Railroad shall request bids in accordance with the bidding
procedures of UMTA, IDOT and the Authority.  The Authority's
procedures are attached hereto as part of Appendix A.  Railroad
shall notify the Authority of its intent to request bids, and
of the names of the suppliers to which Railroad proposes to
send such requests.  Within 10 days after publication of the
bid notice, the Authority may require Railroad to request bids

from additional suppliers. A copy of all bids received in
response to any such request shall be submitted to the
Authority for review and approval together with a
recommendation by Railroad with respect to award. The
Authority may direct Railroad to reject any or all bids
received and take new bids or may approve the award of a
contract or contracts. No contract shall be awarded without
the prior written approval of the Authority. The Authority
shall provide any directions concerning bid acceptance or
rejection to Railroad not later than 7 days prior to the date
on which bids would by their terms expire.

(f) Every contract between Railroad and a supplier
shall be executed in such form as the Authority may approve,
and shall comply in all respects with applicable government
rules and regulations, including without limitation rules and
regulations of UMTA and IDOT. The Authority's right to review
and approve the form of subcontracts shall, however, be limited
to the purpose of assuring compliance with law, governmental
rules and regulations, and this Agreement.

(g) Railroad may bid on any purchases of materials or
supplies in the same manner as any other supplier. In the
event that a bid by Railroad is accepted by the Authority for
the purpose of any materials or supplies, the Cost of such
materials or supplies shall be determined by the bid so
submitted, notwithstanding the provisions of Section 7(e).

Case: 1:25-cv-02439 Document #: 1-1 Filed: 03/07/25 Page 18 of 137 PageID #:81

9/03/81

(h)  Railroad may, in an emergency, advance materials to the Authority for performance of the Work.  In such case, the Authority shall replace such materials in Railroad's inventories as soon as practicable.

(i)  In no event shall any cost herein defined as freight or inter-city passenger costs become reimbursable by the Authority under any purchase of service agreement with Railroad.

6.  Permits.  Railroad or its subcontractors shall obtain all permits, licenses, consents and other approvals required for the performance of the Work.

7.  Payment.  (a)  The Authority shall reimburse Railroad in an amount equal to the total Eligible Cost of the Authority portion of the Railroad activity performed on each project as shown in Appendix B, provided that the amount to be paid by Authority to Railroad under this Agreement shall not exceed $2,039,000 without prior written approval by the Authority.  The Railroad shall reimburse Authority in an amount equal to the total cost of the Railroad portion of the RTA Activity performed on each project as shown in Appendix B, provided that the amount to be paid by Railroad to Authority under this Agreement shall not exceed $1,396,000.  Railroad

- 17 -

9/03/81

shall not be required to perform any part of the Work, or incur liability under this Agreement for any part of the Work, which would require reimbursement to Railroad exceeding such amounts until such written approval has been given by the Authority, which approval or rejection shall not be unreasonably delayed (having regard to the time necessary to reapply to UMTA and IDOT). Such written approval shall state a new maximum amount of reimbursement for Eligible Costs to Railroad and that funds are available to the extent of such new maximum amount. Such new maximum amount shall, if performance of the Work has been stopped pursuant to this paragraph (a), include any additional amounts needed to restart the performance of the Work and such amounts shall be Eligible Costs hereunder. Upon receipt of such approval, Railroad shall continue to perform the Work in accordance with this Agreement until the total of all such reimbursements is equal to the new approved amounts (or to amounts subsequently approved in writing by the Authority under the same procedure).

(b) Where Railroad has caused the Work to be stopped by its sole or arbitrary action, Railroad shall not charge the Authority for any amounts necessary to restart the Work and such amounts shall not be Costs hereunder.

9/03/81

(c)   The Authority and Railroad shall cooperate and use their best efforts to cause the Work to be performed at the lowest overall cost practicable.  Railroad shall immediately notify the Authority in writing whenever Railroad determines that the Cost of any individual Project described in Appendix B may exceed the estimate shown in any particular line item of Appendix B for such part of the Work.

(d)   Railroad may make monthly requests for payment from the Authority of preliminary Eligible Costs of the Work, and the Authority shall honor such requests in the manner set forth in this paragraph.  In order to receive such estimated payments, Railroad shall:

> (1)   complete, execute and submit to the
>       Authority payment requisition forms
>       approved by the Authority;
>
> (2)   submit to the Authority an explanation
>       of the purposes for which costs have
>       been incurred to date; and
>
> (3)   have submitted all financial and
>       progress reports currently required by
>       this Agreement.

Upon receipt of the payment requisition form and the accompanying information in satisfactory form on or before the 15th day of a month, the Authority shall process the requisition and the Authority shall then reimburse preliminary Eligible Costs incurred by Railroad within 30 days of the date upon which such payment requisition form was timely received by

- 19 -

9/03/81

it. Reimbursement shall be made only out of funds received by the Authority pursuant to the applicable portions of the Grants and out of local matching funds required by UMTA and IDOT in connection with the Grants. Any costs (save costs for freight and track equipment charges) which are not included on a payment requisition provided to the Authority by Railroad within 270 days after the end of the calendar year in which such costs were incurred will not be reimbursable as Eligible Costs hereunder, provided, however, that nothing in this Section shall be construed to preclude Railroad from recapturing any valid expense or cost discovered in the course of any subsequent audit conducted pursuant to the provisions of this Agreement. Any costs for freight and track equipment charges which are not included on a payment requisition provided to the Authority by Railroad within 270 days after the close-out of the Project will not be reimbursable as Eligible Costs hereunder, provided, however, that nothing in this Section shall be construed to preclude Railroad from recapturing any valid expense or cost for freight and track equipment charges discovered in the course of any subsequent audit conducted pursuant to the provisions of this Agreement. Reimbursement of any cost item pursuant to this Section shall not constitute a final determination by the Authority that such cost item is an Eligible Cost and shall not constitute a waiver of any violation of the terms of this Agreement committed by Railroad. ·

- 20 -

The Authority will make a final determination as to whether each cost item is an Eligible Cost only after a final audit of the Work has been conducted. If the final audit of the Work indicates that the Authority has made payments to Railroad for items which are determined not to have been Eligible Costs, then Railroad shall promptly remit such payments to the Authority.

(e) "Cost" or "Costs" shall include only the following:

(i) The cost of wages of directly assigned Railroad work forces, including additives applied in accordance with subparagraph (vii), below, including the additives for supervision), and including one project engineer, one project analyst, two clerks (without additives for supervision), and the time devoted to the projects which are the subject of this Agreement by the road master's clerks, but excluding other supervisors and excluding stores personnel. For purposes of this agreement directly assigned Railroad work forces is defined as employees of the Railroad Engineering Department at the level of gang foreman and below. Each position is only reimbursable for time devoted on this project and in no event will these positions be reimbursable if the project is suspended, or after the project is completed. All positions enumerated in this subparagraph (i) for reimbursement shall not be in addition to the same positions enumerated in other ongoing projects which are the subject of other agreements between the Authority and Railroad.

(ii) The cost of wages of directly assigned Railroad work forces for subsequent audits (excluding, however, all fringe benefits and labor additives of any nature whatsoever as herein defined) if, and only if, UMTA reimburses the Authority for such costs.

(iii) The cost, excluding stores expense, of Railroad-furnished materials and supplies, including additives applied in accordance with subparagraph (vii), below.

- 21 -

9/03/81

(iv)   The cost of renting in accordance with this
Agreement any equipment necessary for the Work from owners
other than a railroad, including the cost of fuel, supplies, or
repairs (where such equipment has received a proper joint
inspection by Railroad and the Authority prior to its initial
acceptance for use) actually incurred by Railroad but not
covered by any applicable rental agreement for such equipment.

(v)   The cost of any independent contractors hired by
Railroad in accordance with this Agreement for performance of
the Work.

(vi)   Reasonable equipment rental fees for each item of
Railroad-owned equipment, but excluding small tools, used in
the performance of the Work by Railroad, the same to be
measured by the formula contained in the General Manager's
Association of Chicago Circular G.M.A.-2636-F, and such
supplements or reissues thereof as may be adopted pursuant
thereto.

(vii)   To the actual cost of direct labor, materials and
supplies furnished by Railroad, additives shall be applied in
accordance with rates and rules set forth by the General
Manager's Association of Chicago in its Circular 2710-E, or by
any subsequent or successor publication comparable thereto if
the aforesaid document is no longer in existence; to the price
paid by the Authority for Authority-purchased materials which
are installed by Railroad under this Agreement, an additive at
the rate of 7% of such price shall be paid to Railroad,
provided, however, that with respect to rail furnished by
Railroad or the Authority an additive of 5% of the cost of rail
and a special rail train service charge from the welding plant
to the site of installation in accordance with the applicable
tariffs shall be paid in lieu of the rates set forth in such
Circular 27-10-E or such successor publication.

(viii)   The direct cost of obtaining any necessary
building or construction permits.

(ix)   The cost of recording instruments of ownership
at the Authority's request.

(x)   Sales, use or excise taxes required to be paid by
Railroad on Railroad-furnished materials or supplies.

9/03/81

(xi) Any costs not specifically listed above which are reasonably incurred by Railroad relative to the said Fixed Facilities and approved by the Authority, provided however that the Authority's approval shall not be required where such cost is less than $1,000 and the aggregate of all such costs for which Railroad seeks reimbursement under this Agreement is less than $5,000.

The labor additive described in subparagraph 7(e)(vii), above, covers expenses for vacations, paid holidays, railroad retirement and unemployment insurance taxes, supplemental pensions, health and welfare and group life insurance, and supervision, accounting and use of tools, and such expenses shall not otherwise be reimbursed. The materials additive described in subparagraph 7(e)(vii), above, covers expenses for supervision, stores expense, inspection, accounting, purchasing and transportation to point of use or point from which handled by work train, and such expenses shall not otherwise be reimbursed. General Manager's Association of Chicago additives shall not apply to materials purchased by the Authority, but subparagraph (vii) above shall apply. Where the cost of the Work is allocated between Railroad and the Authority, "Cost" includes only the Authority's portion of the above allocated in accordance with Appendix H. Allocations of costs contained in Appendix H have been based on Railroad's historical usage of facilities for Commuter Service and freight or intercity passenger service.

- 23 -

9/03/81

(f)  Eligible Costs are Costs incurred by Railroad which meet all the requirements set forth below.  They include only Costs (as that term is defined in Section 7(e)) which are:

(i)  necessary or desirable in order to accomplish the Work;

(ii)  actual net costs to Railroad (i.e., the price paid minus any refunds or rebates received by Railroad which have the effect of reducing the cost actually incurred) including fringe benefits and direct overhead and material handling additives in connection with labor and material furnished by Railroad, and otherwise calculated in accordance with Section 7(e);

(iii)  incurred for work performed after the date on which this Agreement, unless specific authorization from the Authority to the contrary is received;

(iv)  satisfactory documented in accordance with Section 7(g);

(v)  treated uniformly and consistently applied in accordance with generally accepted accounting principles;

(vi)  properly allocable to Commuter Service as set forth in Appendices H and H-1 of this Agreement.

(vii)  related to Fixed Facilities installed within the geographical limitations of a Project as described in Appendix F and in the drawings and specifications approved under Section 3;

9/03/81

(viii)  incurred pursuant to and in
conformity with subcontracts,
Grantee Proposals, plans,
specifications, drawings and related
documents approved by the Authority
in accordance with Section 3
hereof.

(g)  Railroad shall establish and maintain as an
integral part of its current accounting system, separate
accounts for each Project ("Project Account"), the form and
content of which shall be subject to approval by the Authority.
All costs charged to each Project, including costs of any
approved services furnished or supplied by Railroad or others,
shall be supported by properly prepared, maintained or executed
payrolls, time records, invoices, contracts, purchase orders,
supporting documents or vouchers evidencing in detail the
nature and propriety of the charges. Any check or order drawn
by Railroad with respect to any item which is chargeable
against a Project Account will be drawn only in accordance with
a properly signed voucher then on file in the office of
Railroad stating in proper detail the purpose for which such
check or order is drawn.  All checks, payrolls, invoices,
contracts, vouchers, orders and other accounting documents (or
the copies thereof) pertaining in whole or in part to the Workj
shall be clearly identified, readily accessible and, to the
extent feasible, kept separate and apart from all other similar
documents not relating to the Work.

- 25 -

9/03/81

8. <u>Maintenance of Fixed Facilities</u>. Except as may be otherwise provided by written agreement between the parties, Railroad shall maintain the Fixed Facilities, or cause them to be maintained, in a safe and operable condition in accordance with American Railroad Engineers Association standards, and otherwise in accordance with normal railroad industry procedures and standards throughout the Use Period. In the event that Fixed Facilities newly constructed or rehabilitated hereunder are damaged or destroyed during the Use Period, Railroad agrees to promptly restore or reconstruct such Fixed Facilities to the level of utility existing prior to such damage or destruction, provided, however, if a purchase of service agreement is in effect at the time of such damage or destruction, the terms of such purchase of service agreement relating to the allocation of claims shall govern. This Section shall not be construed to affect any other obligations or rights Railroad may have with respect to maintenance of the Fixed Facilities.

9. <u>Ownership</u>. The parties' respective ownership interests in the Fixed Facilities shall be as set forth in Appendix G.

10. <u>Use of Fixed Facilities</u>. (a) Except as may be otherrwise provided by written agreement between the parties, Railroad shall use the Fixed Facilities during the Use Period

- 26 -

9/03/81

to provide or to facilitate the providing of Commuter Service
as follows:

> (i)  During periods when a Service
> Agreement is in effect, in accordance with such
> Service Agreement, or

> (ii)  During periods when no Service
> Agreement is in effect, then in accordance with
> all requirements of common and statutory law
> (including regulations thereunder).

This subsection 10(a) shall not be construed to prohibit

Railroad from replacing all or part of a Fixed Facility with

another such facility or parts of a facility, provided,

however, that such replacement is equal or better in

performance than the performance of the property so replaced,

that such replacement will not result in increased maintenance

costs payable by the Authority under any Service Agreement or

any other agreement, and that such replacement is used in the

provision of Railroad's Commuter Service.


(b)  Railroad shall not reduce or terminate Commuter

Service during the Use Period unless it first (i) complies with

all requirements of common and statutory law (including

regulations thereunder), and of agreements between Railroad and

the Authority or other governmental entities, which are then

prerequisites to such reduction or termination, and

(ii) notifies the Authority in writing not later than the

- 27 -

· earlier of (A) 30 days prior to such reduction or termination
or (B) the filing of a request for such reduction or
termination with any government entity.

(c)  Fixed Facilities no longer used for Commuter
Service are referred to in this Section as Retired Facilities.
With respect to each Retired Facility, Railroad shall pay to
the Authority the greater of:

> (i)  The salvage value (less expenses of
> removal) of the Authority Portion of such
> Retired Facility; or

> (ii)  The Cost of the Authority Portion of
> the Work (including the cost to the Authority of
> materials purchased by the Authority)
> attributable to such Retired Facility, reduced
> by:  5% (10% for frogs and switchpoints) of such
> cost for each complete year of the Use Period
> before such  Fixed Facility became a Retired
> Facility, but not more than 100% of such cost.

Notwithstanding any other provision of this subsection 10(c),
if any part of a Fixed Facility becomes a Retired Facility
solely because the Authority directs Railroad to cease using
it excepting such directions caused by or resulting from any
breach by Railroad of this Agreement, the Service Agreement or
any other agreement between the Authority and Railroad,
Railroad shall at its election either [1] pay to the Authority
the net salvage value of the Authority Portion of such Retired

Facility at the time of removal from service or [2] shall make
the Authority Portion of such Retired Facility available for
removal by the Authority (at the Authority's own expense) and
shall transfer its right, title, and interest to the Authority
Portion of the Retired Facility to the Authority without any
other additional cost to the Authority, provided, however, that
the Authority shall have no obligation hereunder to remove the
Authority Portion of the Retired Facility.  Where Railroad
elects to pay the Authority the net salvage value, each such
payment shall be made within 90 days after a Fixed Facility
becomes a Retired Facility.  Such payments shall be in addition
to any other remedies the Authority may have.  Upon payment in
full of all amounts payable to the Authority pursuant to this
paragraph (c) with respect to a Retired Facility, the Authority
shall transfer its right, title, and interest in such facility
to Railroad.

(d)  No freight or inter-city passenger operations on
the Fixed Facilities, save for freight or inter-city passenger
operations allowed under any purchase of service agreement in
effect during the period of this Agreement, shall interfere
with the provision of Commuter Services.

(e)  In the event a purchase of service agreement is not
in effect, no freight or inter-city passenger operations on the
Fixed Facilities, save for freight or inter-city passenger

9/03/81

operations allowed under the last purchase of service agreement previously in effect between the Authority and Railroad, shall interfere with the provision of Commuter Services.

(f)  This Section shall not be construed to affect any other obligations Railroad may have to provide Commuter Service with the right-of-way on which the Fixed Facilities are installed or elsewhere.

11.  Indemnification.  Except as otherwise provided in other written agreements between the parties, Railroad agrees to protect, indemnify, defend and forever save and keep harmless UMTA, IDOT, the Authority and its directors, and their employees and agents from, and to assume all liability and expense (including costs and attorneys' fees) as between the parties hereto for, death or injury to any person or persons and all loss, damage or destruction to any property caused by, attributable to or resulting from, the Work or the maintenance, repair, alteration, replacement, operation, poresence or use of the Fixed Facilities or the failure of Railroad to comply with the provisions of this Agreement.

12.  Insurance.  Except as otherwise provided in other written agreements between the parties, all of the Work performed by Railroad's forces, and Railroad's maintenance, repair, alteration, replacement, operation and use of the Fixed

9/03/81

Facilities, shall be insured by Railroad during performance of
the Work as a Cost in the same manner and to the same extent
(if any) as similar work, operation and use is covered by
Railroad. Railroad shall cause the Authority to be named as an
additional insured or co-insured on any insurance policies it
may have or acquire which relate to the Fixed Facilities or the
Work.

13. Audit and Inspection of Records. Railroad shall at
all times during normal business hours before, during and after
the performance of the Work, permit the authorized representa-
tives of the Authority, UMTA, IDOT, and the Comptroller General
of the United States (a) to inspect and audit all data and
records of Railroad relating to its performance under this
Agreement, (b) to have access to the site of construction or
fabrication, and (c) to inspect all work performed under this
Agreement. Railroad shall furnish to the Authority monthly,
with its requisitions for payment, progress reports and
detailed billings containing such information as the Authority,
UMTA or IDOT may reasonably request.

14. Cooperation in Connection with Inspection. (a) In
connection with any inspection under this Agreement, Railroad
agrees to cooperate fully by making available reports of all
prior inspections (including quality control and safety and
making available for inspection and copying such other reports
as may be reasonably required by Authority, UMTA and IDOT).

- 31 -

9/03/81

All such inspections shall be performed without disruption of or interference with service provided for by the Service Agreement. The results or conclusions of such inspections, tests, and reports shall not be construed as altering in any way Railroad's responsibility to maintain and repair such facilities, maintain its work schedule, or any other obligation assumed by Railroad hereunder.

(b)  The Authority's authorized representatives shall have the right and privilege from time to time, or on a continuing basis, during normal business hours, to enter upon any or all lands and properties of Railroad on which the Projects are located, for the purpose of inspecting and examining the same.  All such inspection conducucted on or from locations open to the general public may be performed with or without advance notice to, or supervision by, Railroad.  All other inspections shall be with advance notice to Railroad, and subject to the right of Railroad to require supervision where appropriate for safety reasons.  Such supervision shall be provided promptly and shall not unreasonably delay, or interfere with, the initiation or conduct of the inspection.

(c)  In the event any officer, employee, consultant, contractors or invitee of the Authority enters upon the property of Railroad in connection with the inspections provided for herein, the Authority shall indemnify and save

- 32 -

harmless the Railroad against and from all liability,
obligations, damage, penalties, claims, cost and expense,
including attorneys' fees for injury to or death or such
officers, employees, consultants or invitees arising as a
result of any act or omission of said officers, employees,
consultants or invitees of the Authority while upon Railroad's
property, except that this clause shall not apply in relation
to acts of Railroad or of its directors, agents and employees,
of willful and wanton negligence or misconduct, or to criminal
acts or omissions in the performance of their duties, or as to
matters as to which they have not acted in good faith.

15. Refunding. (a) If because of any failure of
Railroad to fully observe and comply with (i) the terms of this
Agreement, including any additions or modifications thereto,
(ii) the provisions of any Grant defined in paragraph 2 hereof,
or (iii) any requirements of UMTA or IDOT existing on the date
of this Agreement, or if because any payment or part of any
payment of the additives (because such additives have been
improperly applied by Railroad) described in paragraph 7(e)
hereof is disapproved or disallowed in an audit by UMTA, IDOT
or the United States General Accounting Office, the Authority
is required to refund all or any portion of a Grant, Railroad
agrees on behalf of itself, its successors and assigns, to make
such refund or payment on behalf of the Authority to the extent
such funds were paid to Railroad, and Railroad shall indemnify

9/03/81

and hold harmless the Authority with respect to any such payment or expense including costs and legal fees, incurred in connection therewith.

(b) Railroad shall be notified promptly of any disapprovals or disallowances of the aforesaid additives and shall have the right to contest the same, prior to the Authority repaying or acknowledging the validity of such disapproval or disallowance, in any manner allowed by law, and the Railroad shall be subrogated to all such rights and privileges, including the right to fully pursue the matter in its own name or in the name of the Authority, as the Authority may have with respect to any such disapproval or disallowance.

17. <u>Warranties</u>. Railroad hereby represents, certifies and warrants to the Authority that:

(a) Railroad has title to all right-of-way or other land upon which any of the Fixed Facilities will be installed sufficient to permit installation of said Fixed Facilities and use of the Fixed Facilities thereon in accordance with this Agreement and any Fixed Facilities Lease without violating any existing contract, lease, covenant, agreement, laws or ordinances; provided that if any outstanding mortgage or indenture requires the consent of the owner of the indebtedness, Railroad shall obtain such consent.

(b) The Work will be performed in a good and workmanlike manner, and in accordance with the provisions of this Agreement.

9/03/81

    (c)  All materials, supplies, parts and equipment furnished hereunder by Railroad, title to which is or is to be in the Authority, will be furnished free of all liens and encumbrances (including mechanics' and materialmen's liens) and Railroad has power to, and will transfer good title thereto, subject only to this Agreement.

    (d)  Except for professional opinions and estimates made in good faith by Railroad, none of the written information heretofore furnished, or to be furnished, to the Authority in connection with this Agreement, contains or will at the time furnished contain any untrue statement or misrepresentation of a material fact or will omit to state or represent any material fact necessary to make the statements or representations when made, in the light of the circumstances under which they were made, not misleading in any material respect.

    (e)  Railroad is not included on the U.S. Comptroller General's Consolidated List of Persons or Firms Currently Debarred for Violations of Various Public Contracts Incorporating Labor Standards Provisions and will furnish the Authority with its affidavit to such effect upon request.

17.  <u>Warranty of Construction</u>.  For a period of one year from the date of completion of the Work, as evidenced by the date of final acceptance of the Work by the Authority, Railroad warrants that the Work conforms to the requirements of this Agreement and is free of any defect of equipment, material or workmanship performed by or supplied by Railroad or any of its subcontractors or suppliers, except that Railroad does not hereby warrant against defects in materials or equipment

9/03/81

supplied by the Authority.  Under this warranty, Railroad shall
remedy at its own expense any such failure to conform or any
such defect.

18.  Prohibited Interests.  No member or delegate to the
Congress of the United States, and no member of the Illinois
General Assembly, shall be admitted to any share or part of
this Agreement or to any benefit arising therefrom.

19.  Non-Collusion.  Railroad warrants and represents
that it has not paid and agrees not to pay any bonus,
commission, fee or gratuity to any employee or official of the
Authority for the purpose of obtaining this Agreement.  No
officer, director, or employee of the Authority during his
tenure or for one year thereafter shall have any interest,
direct or indirect, in this Agreement or the proceeds thereof.

20.  Equal Employment Opportunity.  (a)  Railroad agrees
that it will, with respect to its obligations hereunder, comply
with the provisions of Title VII of the United States Civil
Rights Act of 1964 (P.L. 88-352, 78 Stat. 253, 42 U.S.C. 2000e
et seq.), as the same may be amended, and with regulations
promulgated thereunder, and Railroad shall require all of its
subcontractors and suppliers to so comply during the period
they are performing services or providing supplies pursuant to
this Agreement.

Case: 1:25-cv-02439 Document #: 1-1 Filed: 03/07/25 Page 38 of 137 PageID #:101

(b)  Railroad shall comply with the affirmative action provisions set forth at Part 60-4 of Title 41 of the Code of Federal Regulations and included in Appendix A hereto.

(c)  No construction contract or subcontract shall be let by the Authority or Railroad, or by contractors or subcontractors of either of them, unless such contract or subcontract complies in all respects to the extent required by law or by UMTA with Executive Order No. 11246.

(d)  Pursuant to the Illinois Human Rights Act (Ill. Ann. Stat. Ch. 68, Section 1-101 et seq.(Smith-Hurd)) and the regulations promulgated by the Illinois Department of Human Rights (the "Department") thereunder, Railroad hereby agrees to comply with the following Equal Employment Opportunity Clause:

In the event of the contractor's non-compliance with the provisions of this Equal Employment Opportunity Clause, the Illinois Human Rights Act or the Rules and Regulations of the Illinois Department of Human Rights ("Department"), the contractor may be declared ineligible for future contracts or subcontracts with the State of Illinois or any of its political subdivisions or municipal corporations, and the contract may be cancelled or voided in whole or in part, and such other sanctions or penalties may be imposed or

remedies invoked as provided by statute or regulation. During

the preformance of this contract, the contractor agrees as

follows:

(1)  That it will not discriminate against any
employee or applicant for employment because of race, color,
religion, sex, marital status, national origin or ancestry,
age, physical or mental handicap unrelated to ability, or an
unfavorable discharge from military service; and further that
it will examine all job classifications to determine if
minority persons or women are underutilized and will take
appropriate affirmative action to rectify any such
underutilization.

(2)  That, if it hires additional employees in
order to perform this contract or any portion thereof, it will
determine the availability (in accordance with the Department's
Rules and Regulations) of minorities and women in the area(s)
from which it may reasonably recruit and it will hire for each
job classification for which employees are hired in such a way
that minorities and women are not underutilized.

(3)  That, in all solicitations or advertisements
for employees placed by it or on its behalf, it will state that
all applicants will be afforded equal opportunity without
discrimination because of race, color, religion, sex, marital
status, national origin or ancestry, age, physical or mental
handicap unrelated to ability, or an unfavorable discharge from
military service.

(4)  That it will send to each labor organization
or representative of workers with which it has or is bound by a
collective bargaining or other agreement or understanding, a
notice advising each labor organization or representative of
Railroad's obligations under the Illinois Human Rights Act and
the Department's Rules and Regulations.  If any such labor
organization or representative fails or refuses to cooperate
with Railroad in its efforts to comply with such Act and Rules
and Regulations, Railroad shall promptly so notify the
Department and the Authority and will recruit employees from
other sources when necessary to fulfill its obligations
thereunder.

9/03/81

(5)   That it will submit reports as required by the
Department's Rule and Regulations, furnished all relevant
information as may from time to time be requested by the
Department or the Authority, and in all respects comply with
the Illinos Human Rights Act and the Department's Rules and
Regulations.

(6)   That it will permit access to all relevant
books, records, accounts and work sites by personnel of the
Authority and the Department for purposes of investigation to
ascertain compliance with the Illinois Human Rights Act and the
Department's Rules and Regulations.

(7)   That it will include verbatim or by reference
the provisions of this clause in every subcontract it awards
under which any portion of the obligations of Railroad
hereunder are undertaken or assumed, so that such provisions
will be binding upon such subcontractor.  In the same manner as
with other provisions of this contract, Railroad will be liable
for compliance with applicable provisions of this clause by
such subcontractors; and further it will promptly notify the
Authority and the Department in the event any subcontractor
fails or refuses to comply therewith.  In addition, Railroad
will not utilize any subcontractor declared by the Illinois
Human Rights Commission to be ineligible for contracts or
subcontracts with the State of Illinois or any of its political
subdivisions or municipal corporations.

21.   Air Pollution.   Railroad and its subcontractors and

suppliers must submit evidence to the Authority that the

governing air pollution criteria will be met.  This evidence

and related documents will be retained by the Authority for

on-site examination by UMTA.  This Section applies to the

projects comprising the Work.

22.   Project Sign.   Railroad shall erect and maintain,

as a Cost, signs furnished by the Authority and satisfactory to

UMTA, IDOT and the Authority, identifying the project and

- 39 -

Case: 1:25-cv-02439 Document #: 1-1 Filed: 03/07/25 Page 41 of 137 PageID #:104

indicating federal, State of Illinois and Authority participation. Such signs shall conform to the sign specifications in Appendix C. Railroad may remove such signs after completion of all Work hereunder.

23. Minority Business Enterprise. In connection with the performance of this contract, Railroad will cooperate with the Authority in meeting its commitments and goals with regard to the maximum utilization of minority business enterprises and will use its best efforts to insure that minority business enterprises shall have the maximum practicable opportunity to compete for subcontract work under this Agreement.

24. Wage Rates. Minimum wages to be paid in performance of the Work have been established by the U.S. Department of Labor and are shown in Appendix D. If any employees working at the site of the Work are covered by the wage rates shown in Appendix D, such wage rates must be prominently posted at the site of the Work. In performance of the Work, Railroad shall comply with the provisions set forth in Appendix E. This Section 26 shall not apply with respect to  employees whose wage rates are set by collective bargaining agreements entered into pursuant to the National Railway Labor Act or to other employees who are otherwise exempt from coverage of the Davis-Bacon Act.

25.  Cooperation in Obtaining Government Funding:
Railroad and the Authority shall cooperate with each other in
seeking and obtaining from government sources other than the
Authority such funds as may be available to either of them with
respect to the Work.


26.  Opinion of Counsel.  When this Agreement is
executed by Railroad, Railroad will furnish the Authority with
an opinion of Railroad's counsel, dated the date on which this
Agreement is executed by Railroad and to the effect that
(i) Railroad is a corporation duly organized and existing and
in good standing under the laws of its jurisdiction of
incorporation, and has full corporate power to carry on its
business as and where then conducted; (ii) Railroad is
qualified to engage in the business of providing Public
Transportation services by rail in, and is in good standing
under the laws of, the State of Illinois; (iii) the execution,
delivery and performance of this Agreement by Railroad has been
duly authorized by all requisite corporate action of Railroad;
(iv) no consent to or approval of the transactions contemplated
hereby by Railroad's stockholders is required by law; (v) the
compliance by Railroad with the terms and conditions of this
Agreement will not conflict with or result in a breach of the
terms, conditions or provisions of, or constitute a default
under, the Certificate of Incorporation or By-Laws of Railroad

- 41 -

9/03/81

or any judgment, decree, mortgage, indenture or other agreement
or instrument which is or may become applicable to Railroad or
by which its properties may be bound known to such counsel;
(vi) this Agreement has been duly executed and delivered by
Railroad and, assuming due execution and delivery by the
Authority, constitutes a valid and binding obligation of
Railroad enforceable in accordance with its terms; (vii) the
compliance by Railroad with the terms and conditions of this
Agreement will not result in breach of, or default under, any
judgment, decree, mortgage, indenture or other agreement
applicable to Railroad or by which its properties may be bound
known to such counsel; (viii) all governmental and other
approvals and consents required to permit the performance by
Railroad of its obligations under this Agreement have been
obtained or, if not, such opinion shall specify all such
approvals which Railroad must obtain in order to perform its
obligations under this Agreement; and (ix) to the best of the
knowledge and belief of such counsel, there is no action,
proceeding, litigation or investigation pending or threatened
against Railroad before any court or by or before any
governmental authority which could materially and adversely
affect the ability of Railroad to perform any of its
obligations under this Agreement.

9/03/81

27. <u>Non-Waiver</u>. Railroad agrees that in no event shall
any action, including the making by the Authority of any
payment under this Agreement, constitute or be construed as a
waiver by the Authority of any breach or covenant or any
default on the part of Railroad which may then exist and any
action, including the making of any such payment by the
Authority, while any such breach or default shall exist, shall
in no way impair or prejudice any right or remedy available to
the Authority in respect of such breach or default. The
remedies available to the Authority under this Agreement are
cumulative and not exclusive. The waiver or exercise of any
remedy shall not be construed as a waiver of any other remedy
available hereunder or under general principles of law or
equity.

28. <u>Authority Approvals</u>. Whenever the prior written
approval of the Authority is required hereunder, such approval
shall be effective only if signed by the Authority's Chairman
of the Board of Directors or its General Manager, provided,
however, that authority to sign approvals hereunder may be
delegated by the Chairman or General Manager by the giving of
written notice of such delegation to Railroad.

- 43 -

29. Permitted Performance Variations. The failure of
Railroad to perform, in whole or in part, any of the
obligations of Railroad under this Agreement or any Contract,
by reason of the occurrence of fire, flood, explosion,
disaster, strike or labor work stoppage, materials
unavailability or any other cause beyond the reasonable control
of Railroad (herein called a "Force Majeure Occurrence") shall
be excused for all purposes (including times of performance),
provided that Railroad (i) shall promptly begin work when the
materials become available and promptly undertake and complete
the repair, restoration, or replacement of any property which
is necessary for the performance of the Railroad's obligations
hereunder, and which is damaged or destroyed as a result of a
Force Majeure Occurrence; and (ii) in any event shall resume
normal performance of Railroad's obligations hereunder, as soon
as reasonably possible following the cessation of, or the
completion of repairs, restoration or replacement made
necessary by, a Force Majeure Occurrence.

30. Successors and Assigns and Assignment. This
Agreement shall bind and inure to the benefit of the respective
successors and assigns of the Authority and Railroad. Any
successor to Railroad's rights under this Agreement must be

- 44 -

approved by the Authority unless the transaction is specifically authorized under federal law. The Authority will not unreasonably withhold such approval. Any successor will be required to accede to all of the terms, conditions and requirements of this Agreement as a condition precedent to such succession.

31. Agreement Period. The term of this Agreement shall begin on the date hereof, and shall end on the completion of all obligations hereunder. This Agreement may be terminated by the Authority at any time prior to completion of the Work with or without cause, by not less than 10 days written notice to Railroad, but this Agreement may be terminated subsequent to the completion of the Work only for breach hereof, breach of any Fixed Facilities Lease, or as otherwise expressly permitted by this Agreement. In the event of termination hereof by the Authority without cause prior to completion of the Work, Railroad shall be paid in accordance with this Agreement its (i) Eligible Costs for all obligations necessarily incurred in preparing to perform the Work, (ii) for any portion of the Work satisfactorily completed prior to the date of termination, and (iii) for restoration of Railroad's property to conditions substantially similar to such property's condition prior to commencement of the Work (if Railroad so requests).

Case: 1:25-cv-02439 Document #: 1-1 Filed: 03/07/25 Page 47 of 137 PageID #:110

32. Governing Law. This Agreement shall be governed
by the laws of the State of Illinois.

33. Headings. The section headings of this Agreement
are for convenience and reference only and in no way define,
limit or describe the scope or intent of this Agreement.

34. Amendments. Any proposed change in this Agreement
shall be submitted to the Authority for its prior approval. No
modification, addition or amendment to this Agreement shall be
effective unless and until such modification, addition or
amendment shall be reduced to a writing, executed by the
authorized officers or agents of each party.

35. Notices. Except as otherwise specified in this
Agreement, all requests, notices, demands, authorizations,
directions, consents or waivers or other documents required or
permitted under this Agreement shall be in writing and shall be
delivered in person to, or deposited postage prepaid in the
registered or certified mails of the United States, addressed
to the Authority at:

> REGIONAL TRANSPORTATION AUTHORITY
> Post Office Box 3858
> Chicago, Illinois 60654
> Attn: Director of Transportation

9/03/81

or if delivered in person, to:

> REGIONAL TRANSPORTATION AUTHORITY
> 300 North State Street
> Chicago, Illinois  60610
> Attn:  General Manager

or to Railroad at:

> CHICAGO AND NORTHWESTERN
> TRANSPORTATION COMPANY
> 400 West Madison Street
> Chicago, Illinois  60606
> Attn:  Mr. Michael W. Payette,
>        Director of Commuter Services

or to such person and at such other address as either party may at any time or from time to time designate for itself by notice in accordance herewith.  Each such request, notice, demand, authorization, direction, consent, waiver or other document shall be deemed to be delivered to a party when received at its address set forth or designated as above provided.  A copy of each notice to the Authority shall be provided to: Jeremiah Marsh, Esquire, Hopkins & Sutter, One First National Plaza, Chicago, Illinois 60603.

36.  Counterparts.  This Agreement may be simultaneously executed in several counterparts, each of which so executed shall be deemed to be an original, and such counter parts together shall constitute one and thehe same instrument.

9/03/81

IN WITNESS WHEREOF, the Authority and Railroad have caused this Agreement to be duly executed.


ATTEST:                                    REGIONAL TRANSPORTATION AUTHORITY

Edmund J Wolf  9-11-81      BY: _____
              SECRETARY                    Chairman, Board of Directors


ATTEST:                                    CHICAGO AND NORTHWESTERN
                                           TRANSPORTATION COMPANY

_____    BY: _____
      ASSISTANT SECRETARY.                 Senior Vice President
                                           Law and Real Estate

- 48 -

APPENDIX   A

REQUIRED THIRD PARTY CONTRACT CLAUSES AND PROVISIONS

- UMTA/IDOT  Addendum For Construction Contracts
- UMTA/IDOT  Addendum For Material Procurement
- Federal Equal Employment Opportunity Requirements
- Regional Transportation Authority Regulations
   Governing Public Bidding
- Illinois Revised Statutes - Public Bidding

U.S. Department of Transportation
Urban Mass Transportation Administration
("UMTA") and Illinois Department of
Transportation ("IDOT") Addendum
For Material Procurement


1.  **Approved Equals and Brand Names**. Where a feature, component, or item is specified by brand name in the Specifications, the words "or Approved Equal" are implied. All approvals and requests for approvals of proposed Approved Equals must be in writing. Specification by brand name of components or equipment in the Specifications shall not relieve Contractor from its responsibility to design and construct the Equipment and perform the work in accordance with the general performance requirements of the Specifications and these General Provisions.

2.  **Pollution Control Requirements**. Contractor and all subcontractors or suppliers shall, upon request, submit evidence that all governing criteria (if applicable to the Equipment or its operation) of any federal, state, municipal or other duly authorized governmental authority, including all applicable standards, orders, or regulations issued pursuant to the Clean Air Act of 1970, will be met by Contractor or such subcontractor or supplier with respect to the Equipment.

3.  **Audit**. Contractor shall permit the authorized representatives of the RTA, IDOT, U.S. Department of Transportation and the Comptroller General of the United States to inspect and audit all data and records of Contractor relating to its performance under the contract.

4.  **Minority Business Enterprise**.

    A.  **Regional Transportation Authority Program**. Contractor must take all such action as may be necessary and reasonable to assure that minority business enterprises have an equitable opportunity to compete in all subcontracting activities and shall cooperate with the RTA in its program for the participation of minority enterprises in RTA procurements.

    B.  **U.S. Department of Transportation Regulations**. Each contractor shall agree to abide by the statements in subparagraphs (1) and (2) below.

        (1)  **Policy**. It is the policy of the Department of Transportation that minority business enterprises as defined in 49 CFR Part 23 shall have the maximum opportunity to participate in the performance of contracts financed in whole or in part with Federal funds under this agreement. Consequently the MBE requirements of 49 CFR Part 23 apply to this agreement.

(2) MBE OBLIGATION. The Contractor agrees to ensure that minor-
ity business enterprises as defined in 49 CFR Part 23 have
the maximum opportunity to participate in the performance of
contracts and subcontracts financed in whole or in part with
Federal funds provided under this agreement. In this regard
all Contractors shall take all necessary and reasonable steps
in accordance with 49 CFR Part 23 to ensure that minority
business enterprises have the maximum opportunity to compete
for and perform contracts. Contractors shall not discrimin-
ate on the basis of race, color, national origin, or sex in
the award and performance of DOT-assisted contracts.

5. Employment.

A. Equal Employment Opportunity and Fair Employment Practices.
In connection with the execution and performance of this contract,
Contractor shall not discriminate against any employee or applicant
for employment because of race, religion, color, sex, or national
origin. Contractor shall take affirmative action to assure that
applicants are employed, and that employees are treated during
their employment, without regard to their race, religion, color,
sex, or national origin. Such action shall include but not be
limited to, the following: employment, upgrading, demotion,
transfer, recruitment, recruitment advertising, layoff, termina-
tion, rates of pay or other forms of compensation, and selection
for training, including apprenticeship.

B. Regional Transportation Authority Regulations. Contractor agrees
to comply with the Regulations on Fair Employment Practices in the
Purchasing Manual of the RTA, and the provisions thereof are hereby
incorporated herein by reference.

C. U.S. Department of Transportation Regulations. Contractor for it-
self, its assignees and successors in interests, agrees that it
will comply with the following regulation:

(1) Compliance with Regulations. Contractor shall comply with
the Regulations relative to nondiscrimination in federally-
assisted programs of the Department of Transportation (here-
inafter, "DOT") Title 49, Code of Federal Regulations, Part
21, as they may be amended from time to time
(hereinafter referred to as the Regulations), which are
incorporated herein by reference and made a part of this
contract.

(2) **Nondiscrimination.** Contractor, with regard to the work performed by it during this contract, shall not discriminate on the grounds of race, color, or national origin in the selection and retention of subcontractors, including procurements of materials and leases of equipment. Contractor shall not participate either directly or indirectly in the discrimination prohibited by Section 21.5 of the Regulations, including employment practices when this Contract covers a program set forth in Appendix B of the Regulations.

(3) **Solicitations for Subcontracts (including Procurements of Materials and Equipment).** In all solicitations either by competitive bidding or negotiation made by Contractor for work to be performed under a subcontract, including procurements of materials or leases of equipment, each potential subcontractor or supplier shall be notified by Contractor of Contractor's obligations under the contract and the Regulations relative to nondiscrimination on the grounds of race, color, or national origin.

(4) **Information and Reports.** Contractor shall provide all information and reports required by the Regulations or directives issued pursuant thereto, and shall permit access to its books, records, accounts, other sources of information, and its facilities as may be determined by the RTA or UMTA to be pertinent to ascertain compliance with such Regulations, orders and instructions. Where any information required of Contractor is in the exclusive possession of another who fails or refuses to furnish this information, Contractor shall so certify to the RTA, or UMTA, as appropriate, and shall set forth what efforts it has made to obtain the information.

(5) **Sanctions for Noncompliance.** In the event of Contractor's noncompliance with the nondiscrimination provisions of this contract, the RTA shall impose such contract sanctions as it or UMTA may determine to be appropriate including, but not limited to:

   (a) Withholding of payments to Contractor under this contract until Contractor complies, and/or

   (b) Cancellation, termination or suspension of this contract, in whole or in part.

Page 3 of 12

(6) <u>Incorporation of Provisions</u>. Contractor shall include the provisions of paragraphs (1) through (6) of this Section 5.C in every subcontract, including procurements of materials and leases of equipment, unless exempt by the Regulations, or directives issued pursuant thereto. Contractor shall take such action with respect to any subcontract or procurement as the RTA or UMTA may direct as a means of enforcing such provisions including sanctions for noncompliance; provided, however, that in the event Contractor becomes involved in, or is threatened with, litigation with a subcontractor or supplier as a result of such direction, Contractor may request the RTA to enter into such litigation to protect the interest of the RTA, and in addition, Contractor may request the United States to enter into such litigation to protect the interests of the United States.

D. <u>Equal Employment Opportunity - FEPC</u>. Contractor shall comply with, and assure that each subcontractor complies with, the following regulations of the Illinois Human Rights Commission:

(1) In the event of the contractor's noncompliance with any provision of this Equal Opportunity Clause, the Illinois Human Rights Act of the Illinois Human Rights Commission's Rules and Regulations, the Contractor may be declared nonresponsible and therefore ineligible for future contracts or subcontracts with the State of Illinois or any of its political subdivisions or municipal corporations, and the contract may be cancelled or avoided in whole or in part, and such other sanctions or penalties may be imposed or remedies invoked as provided by statute or regulation. During the performance of this contract, the Contractor agrees as follows:

(a) That it will not discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin or ancestry, physical or mental handicap unrelated to ability, or an unfavorable discharge from military service; and further that it will examine all job classifications to determine if minority persons or women are underutilized and will take appropriate affirmative action to rectify any such underutilization.

(b) That, if it hires additional employees in order to perform this contract or any portion hereof, it will determine the availability (in accordance with the Commission's Rules and Regulations) of minorities and women in the area(s) from which it may reasonably recruit and it will hire for each job classification

for which employees are hired in such a way that minorities and women are not underutilized.

(c) That, in all solicitations or advertisements for employees placed by it or on its behalf, it will state that all applicants will be afforded equal opportunity with out discrimination because of race, color, religion, sex, national origin or ancestry, physical or mental handicap unrelated to ability, or an unfavorable discharge from military service.

(d) That it will send to each labor organization or representative of workers with which it has or is bound by a collective bargaining or other agreement or understanding, a notice advising such labor organization or representative of the Contractor's obligations under the Illinois Human Rights Act and the Commission's Rules and Regulations. If any such labor organization or representative fails or refuses to cooperate with the Contractor in its efforts to comply with such Act and Rules and Regulations, the Contractor will promptly so notify the Illinois Human Rights Commission and the contracting agency and will recruit employees from other sources when necessary to fulfill its obligations thereunder.

(e) That it will submit reports as required by the Illinois Human Rights Commission's Rules and Regulations, furnish all relevant information as may from time to time be requested by the Commission or the contracting agency, and in all respects comply with the Illinois Human Rights Act and the Commission's Rules and Regulations.

(f) That it will permit access to all relevant books, records, accounts and work sites by personnel of the contracting agency and the Illinois Human Rights Act and the Commission's Rules and Regulations.

(g) That it will include verbatim or by reference the provisions of paragraphs a through g of this clause in every performance subcontract as defined in Section 1.1(17) (a) of the Commission's Rules and Regulations so that such provisions will be binding upon every such subcontractor; and that it will also include the provisions of paragraphs (a), (e), (f) and (g) in every supply subcontract as defined in Section 1.1(17) (a) of the Commission's Rules and Regulations so that such

provisions will be binding upon every such subcon-
tractor. In the same manner as with other provisions of
this contract, the contractor will be liable for
compliance with applicable provisions of this clause by
all its subcontractors and further it will promptly
notify the contracting agency and the Illinois Human
Rights Commission in the event any subcontractor fails
or refuses to comply therewith. In addition, no
contractor will utilize any subcontractor declared by
the Commission to be nonresponsible and therefore
ineligible for contracts or subcontracts with the State
of Illinois or any of its political subdivisions or
municipal corporations.

(2)   Each contractor and subcontractor shall in turn include the
Equal Employment Opportunity Clause set forth in Section 6.1
of these Rules and Regulations in each of its subcontracts
verbatim or by reference so that provisions of Paragraphs (a)
through g of said clause will be binding upon subcontractors
of every tier, provided, however, that only paragraphs (a),
(e), (f) and (g) need be included in every subcontract as
defined in Section 1.1(17)(a) of these Rules and
Regulations."

## 6. Termination and Suspension.

### A. Termination for Default.

(1)   Each of the following is an event of default:

(a)   if Contractor shall fail to begin the work or abandons
it;

(b)   if the contract is assigned or the work sublet other-
wise than as permitted by the Contract Documents;

(c)   if Contractor unreasonably delays performance of the
contract without excuse hereunder;

(d)   if Contractor violates or breaches any of the provi-
sions or covenants of the Contract Documents or does
not comply therewith in good faith;

(e) if the delivery of the Equipment or any part thereof is not completed within the time prescribed in the Agreement for its delivery or within the time to which such delivery is extended by the RTA; and

(f) (in view of the necessity for special skill and ample financial resources in the prosecution of the work) if Contractor shall become insolvent or bankrupt, or shall make an assignment for the benefit of creditors, or take advantage of any insolvency statute or debtor or creditor law now or hereafter enacted or amended, or if its property or affairs shall be put in the hands of a receiver or receivers.

(2) Upon the occurrence of any event of default, the RTA, upon written notice to Contractor, shall have the following rights:

(a) the right to declare Contractor in default and the contract abandoned and to take over and complete the work or any part thereof itself or through other contractors, as agent for and at the expense of Contractor; and

(b) the right to declare the Contractor in default and to terminate the contract as to any units of the Equipment not yet delivered.

In either event the RTA reserves its rights to damages, liquidated or otherwise, arising out of any such default, and such other remedies as may be provided by law, unless Contractor cures such default within seven (7) days after receipt of written notification of default. In the event of cancellation or termination following an event of default, no cancellation charges shall be paid to Contractor.

B. Termination without Default. In the event UMTA or IDOT financial assistance for the project of which this contract is a whole or a part is suspended, abrogated, or terminated for any reason whatsoever, RTA shall have the right to terminate this contract upon receipt of written notice by the Contractor, with no obligation other than payment to the Contractor of the following cancellation charges. In the event of cancellation other than for Contractor's default, the RTA agrees to pay, and Contractor agrees to accept as its sole remedy, cancellation charges equal to the cost (less salvage), if any, of materials, supplies, and labor then expended

or irrevocably committed to the work, plus a reasonable profit (not greater than 10%) based on a proportionate allocation of the profit which would have been earned had the entire work been performed to the portion of the work then performed. Title to all property covered by such charges shall vest in the RTA without additional charge. Payment of cancellation charges will be made within forty-five (45) days after presentation of Contractor's invoice showing all cancellation charges accompanied by evidence substantiating each cost or expense claimed.

C.  Post-Termination Obligations. After receipt of a notice of termination, and except as otherwise directed by RTA, the Contractor shall:

    (a)  stop work under the contract on the date and to the extent specified in the notice of termination;

    (b)  place no further orders or subcontracts for materials, services, or facilities, except as may be necessary for completion of such portion of the work under the contract as is not terminated; and

    (c)  terminate all orders and subcontracts to the extent that they relate to the performance of work terminated by the notice of termination.

D.  Regional Transportation Authority Term and Conditions Termination Clause. This termination section 6. supersedes paragraph 9, of the Regional Transportation Authority's Terms and Conditions.

7.  Interest of Members of Congress. No member of or delegate to the Congress of the United States nor any member or delegate to the Illinois General Assembly shall be admitted to any share or part of this contract or to any benefit arising therefrom.

8.  Prohibited Interest. No member, officer or employee of the RTA or of a local public body with financial interest or control in this contract during his tenure or for one (1) year thereafter, shall have any interest, direct or indirect in this contract or the proceeds thereof.

9.  Financial Assistance Contract. This contract is subject to the provisions of the financial assistance contracts between the RTA and other sponsoring agencies which are identified in the Invitation for Bids and UMTA and IDOT.

10. Ineligible Contractors and Subcontractors. Any name appearing upon the Controller General of the United States' list of ineligible contractors for federally financed and assisted construction shall not be eligible to act as a subcontractor for the Contractor pursuant to this contract. In the event the Contractor is on the Comptroller General's list of ineligible contractors for federally financed or assisted construction, this contract may be cancelled, terminated or suspended by the RTA.

11. Contract Changes. Any proposed change in the contract shall be submitted in writing to the RTA for its prior approval.

12. Subcontracts. (Cooperative and Carrier Agreements) The (third party agency, carrier, contractor) shall not enter into any sub-contracts or agreements, or start any work by the work forces of (the third party), with respect to this contract, without the prior concurrence of the Illinois Department of Transportation. All such subcontracts, agreements, and force work and materials shall be handled as prescribed for third-party contracts, agreements, and force-account work by the IDOT manual for Public Transportation Capital Improvement Grants. All requests for concurrence shall be submitted to the RTA for approval prior to submittal to IDOT.

13. Copyright and Rights in Data. This Agreement shall be subject to the U.S. Urban Mass Transportation Administration's (UMTA) policy on copyrights and rights in data, with respect to research reports and other technical materials developed with program funds. That policy, as set forth in Section III B of the UMTA External Operating Manual, permits the author or grantee to copyright the work, but UMTA reserves a royalty-free nonexclusive and irrevocable license to reproduce, publish or otherwise use, and to authorize others to use, the work for Government purposes.

14. Cargo Preference – Use of United States - Flag Vessels.

The Contractor agrees --

A. To utilize privately owned United States - flag commercial vessels to ship at least 50% of the gross tonnage (computed separately for dry bulk carriers, dry cargo lines, and tankers) involved, whenever shipping any equipment, materials, or commodities pursuant to this contract, to the extent such vessels are available at fair and reasonable rates for United States-flag commercial vessels.

B. To furnish within 20 days following the date of loading, for shipment originating within the United States or within 30 working

days following the date of loading for shipments originating outside the United States, a legible copy of a rated, "on board" commercial ocean bill-of-lading in English for each shipment of cargo described in paragraph A above to the UMTA Administrator and grantee through the prime contractor in the case of subcontractor bill-of-lading and to the Division of National Cargo, Office of Market Development, Maritime Administration, Washington, D.C. 20230.

C. To insert the substance of the provisions of this clause in all subcontracts issued pursuant to this clause.

## 15. Surface Transportation Assistance Act.

A. Pursuant to Sections 401(a) and (b) of the Surface Transportation Assistance Act of 1978, the Contractor agrees that any contract awarded pursuant to this bid, whose total cost exceeds $500,000 shall utilize for this project only such unmanufactured articles, materials and supplies, as have been manufactured in the United States for substantially all articles, materials and supplies mined, produced or manufactured, as the case may be, in the United States, provided, however, that the foregoing provision shall not apply where the Secretary of Transportation has made one of the following determinations:

(1) That the application of the foregoing provision would be inconsistent with the public interest;

(2) That in the case of the acquisition of rolling stock the application of the foregoing clause would result in unreasonable cost (after granting appropriate price adjustments to domestic products based on that portion of project cost likely to be returned to the United States and to the States in the form of tax revenues);

(3) That supplies of the class or kind to be used in the manufacture of articles, materials, or supplies that are not mined, produced or manufactured in the United States are not available in sufficient and reasonable quantity; or

(4) That the inclusion of domestic material will increase the cost of the overall project contract by more than 10 per centum.

B.  Likewise, Contractor agrees, as a condition of responsiveness to, and in order to induce the acceptance of this Bid Proposal, that it will submit with its Bid Proposal a completed Buy America Certificate, as set forth below:

### Buy America Certificate

The bidder or offeror hereby certifies that each end product, except the end products listed below, is a domestic end product, as defined in 49 CFR 660.13(d); and that components of unknown origin have been considered to have been mined, produced, or manufactured outside the United States.

Excluded end products (show country of origin for each excluded end product):

C.  <u>REQUIRED IN BIDDING REQUIREMENTS</u>

"In the event a single bid is received, the Regional Transportation Authority will conduct a price and/or cost analysis of the bid. A price analysis is the process of examining the bid and evaluating the separate cost elements. It should be recognized that a price analysis through comparison to other similar procurements must be based on an established or competitive price of the elements used in the comparison. The comparison must be made to a purchase of similar quantity and involving similar specifications. Where a difference exists, a detailed analysis must be made of this difference and costs attached thereto.

Where it is impossible to obtain a valid price analysis, it may be necessary for the Regional Transportation Authority to conduct a cost analysis of the bid price with the bidder's full cooperation.

The price and/or cost analysis shall be made by competent and experienced auditors or price analysts. An engineer's estimate or comparison of the prices involved is insufficient.

If the Regional Transportation Authority does not have the capabilities to perform the needed analyses, UMTA will lend support in obtaining the services of the Defense Contract Audit Agency.

The Regional Transportation Authority shall submit to UMTA all data and analyses of the determination prior to award of the contract."

16. BUY AMERICA CERTIFICATE

STATE OF _____ __ _____ )
                                                    )
                                                    )        SS
                                                    )
COUNTY OF _____ · _____ )


The bidder or offeror hereby certifies that each end product, except the end products listed below, is a domestic end product, as defined in 49 CFR 660.13(d); and that components of unknown origin have been considered to have been mined, produced, or manufactured outside the United States.

Excluded end products (show country of origin for each excluded end product):


                                                    Signed _____  ·  _____


Signed and sworn to                    Seal:
before me this____day
of_____,19___.


_____
     Notary Public


                    IMPORTANT:  THIS CERTIFICATE MUST BE
                    EXECUTED  AND SUBMITTED WITH THE BID
                    PROPOSAL.

U. S. Department of Transportation
Urban Mass Transportation Administration
("UMTA") and Illinois Department of
Transportation ("IDOT") Addendum
For Construction Contracts

1.0 Approved Equals and Brand Names. Where a feature, component, or item is specified by brand name in the Specificatons, the works "or Approved Equal" are implied. All approvals and requests for approvals of proposed Approved Equals must be in writing. Specification by brand name of components or equipment in the Specifications shall not relieve Contractor from its responsibility to design and construct the equipment and perform the work in accordance with the general performance requirements of the Specifications and these General Provisions.

2.0 Pollution Control Requirements. Contractor and all subcontractors or suppliers shall, upon request, submit evidence that all governing criteria (if applicable to the Equipment or its operations) of any federal, state, municipal or other duly authorized governmental authority, including all applicable standards, orders, or regulations issued pursuant to the Clean Air Act of 1970, will be met by Contractor or such subcontractor or supplier with respect to the Equipment.

3.0 Audit. Contractor shall permit the authorized representatives of the RTA, IDOT, U.S. Department of Transportation and the Comptroller General of the United States to inspect and audit all data and records of Contractor relating to its performance under the contract.

4.0 Minority Business Enterprise. Contractor must take all such action as may be necessary and reasonable to assure that minority business enterprises have an equitable opportunity to compete in all sub-contracting activities and shall cooperate with the RTA in its program for the participation of minority enterprises in RTA procurements.

5.0 Employment

5.1 Equal Employment Opportunity and Fair Employment Practices. In connection with the execution and performance of this contract, Contractor shall not discriminate against any employee or applicant for employment because of race, religion, color, sex or national origin. Contractor shall take affirmative action to assure that applicants are employed, and that employees are treated during their employment, without regard to their race, religion, color, sex or national origin. Such action shall include but not be limited to, the following: employment, upgrading, demotion, transfer, recruitment, recruitment advertising, layoff, terminations, rates of pay or other forms of compensation, and selection for training, including apprenticeship.

- 25 -

**5.2 Regional Transportation Authority Regulations.** Contactor agrees to comply with the Regulations on Fair Employment Practices in the Purchasing Manual of the Authority, and the provisions thereof are hereby incorporated herein by reference.

**5.3 U.S. Department of Transportation Regulations.** Contractor for itself, its assignees and successors in interests, agrees that it will comply with the following regulation:

(a) **Compliance with Regulations.** Contractor shall comply with the Regulations relative to nondiscrimination in federally-assisted programs of the Department of Transportation (hereinafter, "DOT") Title 49, Code of Federal Regulations, Part 21, as they may be amended from time to time (hereinafter referred to as the Regulations), which are herein incorporated by reference and made a part of this contract.

(b) **Nondiscrimination.** Contractor, with regard to work performed by it during this contract, shall not discriminate on the grounds of race, color, or national origin in the selection and retention of subcontractors, including procurements of materials and leases of equipment Contractor shall not participate either directly or indirectly in the discimination prohibited by Section 21.5 of the Regulations, including employment practices when this Contract covers a program set forth in Apprendix B of the Regulations.

(c) **Solicitations for Subcontracts (including Procurements of Materials and Equipment).** In all solicitations either by competitive bidding or negotiation made by Contractor for work to be performed under a subcontract, including procurements of materials or leases of equipment, each potential subcontractor or supplier shall be notified by Contractor of Contractor's obligations under the contract and the Regulations relative to nondiscrimination on the grounds of race, color, or national origin.

(d) **Information and Reports.** Contractor shall provide all information and reports required by the Regulations or directives issued pursuant thereto, and shall permit access to its books, records, accounts, other sources of information, and its facilities as may be determined by the RTA or UMTA to be pertinent to ascertain compliance with such Regulations, orders and instructions. Where any information required of Contractor is in the exclusive possession of another who fails or refuses to furnish information, Contractor shall so certify to the RTA, or UMTA, as appropriate, and shall set forth what efforts it has made to obtain the information.

- 26 -

(e) Sanctions for Noncompliance. In the event of Contractor's noncompliance with the nondiscrimination provisions of this Contract, the RTA shall impose such contract sanctions as it or UMTA may determine to be appropriate, including, but not limited to:

    (i) Withholding of payments to Contractor under this contract until Contractor complies, and/or

    (ii) Cancellation, termination or suspension of this contract, in whole or in part.

(f) Incorporation of Provisions. Contractor shall include the provisions of paragraphs (a) through (f) (of this Section 5.3) in every subcontract, including procurements of materials and leases of equipment, unless exempt by the Regulations, or directives issued pursuant thereto. Contractor shall take such action with respect to any subcontract or procurement as the RTA or UMTA may direct as a means of enforcing such provisions including sanctions for noncompliance; provided, however, that in the event Contractor becomes involved in, or is threatened with, litigation with a subcontractor or supplier as a result of such direction, Contractor may request the RTA to enter into such litigation, Contractor may request the United States to enter into such litigation to protect the interests of the United States.

5.4 Equal Employment Opportunity - FEPC. Contractor shall comply with, and assure that each subcontractor complies with, the following regulations of the Illinois Fair Employment Practices Commission:

5.4.1 Section 6.1. In the event of the contractors's noncompliance with any provisions of this Equal Opportunity Clause, the Illinois Fair Employment Practices Act or the Fair Employment Practices Commission's Rules and Regulations, the Contractor may be declared nonresponsible and therefore ineligible for future contracts or subcontracts with the State of Illinois or any of its political subdivisons or municipal corporations, and the contract may be cancelled or avoided in whole or in part, and such other sanctions or penalites may be imposed or remedies invoked as provided by statute or regulations. During the performance of this contract, the contractor agrees as follows:

(1) That it will not discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin or ancestry, physical or mental handicap unrelated to ability, or an unfavorable discharge from military service; and further that it will examine all job classifications to determine if minority persons or women are underutilized and will take appropriate affirmative action to rectify any such underutilization.

- 27 -

(2) That, if it hires additional employees in order to
perform this contract or any portion hereof, it will
dtermine that availability (in accordance with the
Commission's Rules and Regulations) of minorities and
subcontractors and further it will promptly notify
the contracting agency and the Illinois Fair Employ-
ment Practices Commission in the event any subcon-
tractor fails or refuses to comply therewith. In
addition, no contractor will utilize any subcontrac-
tor declared by the Commission to be nonresponsible
and threfore ineligible for contracts or subcontracts
with the State of Illinois or any of its political
subdivisions or municipal corporations.

5.4.2 Section 6.3 Subcontracts. Each contractor and sub-
contractor shall in turn include the Equal Employment Oppor-
tunity Clause set forth in Section 6.1 of these Rules and
Regulations in each of its subcontracts verbatim or by refer-
ence so that provisions of Paragraphs 1 through 7 of said
clause will be binding upon subcontractors of every tier,
provided, however, that only paragraphs 1, 5, 6 and 7 need be
included in every subcontract as defined in Section 1.1 (17)
(a) of these Rules and Regulations.

6.0 Termination and Suspension.

6.1 Termination for Default.

(a) Each of the following is an event of default:

(i) if Contractor shall fail to begin the work or
abandons it;

(ii) if the contract is assigned or work the sublet
otherwise than as permitted by the Contract
Documents;

(iii) if Contractor unreasonably delays performance
of the contract with excuse hereunder;

(iv) if Contractor violates or breaches any of the
provisions or convenants of the Contract Docu-
ments or does not comply therewith in good
faith;

(v) if the delivery of the Equipment or any part
thereof is not completed within the time pre-
scribed in the contract for its delivery or
within the time to which such delivery is
extended by the RTA; and

(vi) (in view of the necessity for special skill
and ample fianancial resources in the prose-
cution of the work) if Contractor shall make

- 28 -

an assignment for the benefit of creditors, or take advantage of any insolvency statute or debtor or creditor law now or hereafter enacted or amended, or if its property or affair shall be put in the hands of a receiver or receivers.

(b) Upon the occurence of any event of default, the RTA, upon written notice to Contractor, shall have the following rights:

   (i) the right to declare Contractor in default and the contract abandoned and to take over and complete the work or any part thereof itself or through other contractors, as agent for and at the expense of Contractor; and

   (ii) right to declare the Contractor in default and to terminate the contract as to any units of the Equipment not yet delivered.

In either event, the RTA reserves its rights to damages, liquidated or otherwise, arising out of any such default, and such other remedies as may be provided by the law, unless Contractor cures such default within seven (7) calendar days after receipt of written notification of default. In the event of cancellation or termination following and event of default, no cancellation charges shall be paid to Contractor.

6.2 Termination without Default. In the event UMTA or IDOT financial assistance for the project of which this contract is a whole or a part is suspended, abrogated, or terminated for any reason whatsover, RTA shall have the right to terminate this contract upon receipt of written notice by the Contractor, with no obligation other than payment to the Contractor of the following cancellation charges. In the event of cancellation other than for Contractor's default, the RTA agrees to pay, and Contractor agrees to accept as its sole remedy, cancellation charges equal to the cost (less salvage), if any, of materials, supplies, and labor than expended or irrevocably commited to the work, plus a reasonable profit (not greater than 10%) based on a proportionate allocation of the profit which would have been earned had the entire work been performed to the portion of work than performed. Title to all property covered by such charges shall vest in the RTA without additional charge. Payment of cancellation charges will be made within forty-five (45) calendar days after presentation of Contractor's invoice showing all cancellation charges accompanied by evidence substantiating each cost or expense claimed.

6.3 Post-Termination Obligations. After receipt of a notice of termination, and except as otherwise directed by RTA, the Contractor shall:

(a)   stop work under the contract on the date and to the
      extent specified in the notice of termination;

(b)   place no further orders or subcontracts for mater-
      ials, services, or facilities, except as may be
      necessary for completion of such portion of the work
      under the contract as is not terminated; and

(c)   terminate all orders and subcontracts to the extent
      that they relate to the performance of work termin-
      ated by the notice of termination.

### 7.0 UNAVOIDABLE DELAYS

If the delivery of completed Equipment under this
contract should be unavoidably delayed, the RTA shall extend
the time for completion of the contract for the determined
number of days of excusable delay. A delay is unavoidable only
if the delay was not reasonably expected to occur in connection
with or during the Contractor's performance, and was not caused
directly or substantially by acts, omissions, negligence, or
mistakes of the Contractor, the Contractor's suppliers, or
their agents, and was substantial and in fact caused the
Contractor to miss delivery dates, and could not adequately
have been guarded against by contractual or legal means.

### 7.1 NOTIFICATION OF DELAY

The Contractor shall notify the RTA by telephone as
soon as the Contractor has, or should have, knowledge that an
event has occured which will delay deliveries. Within 5
calendar days, the Contractor shall confirm such notice in
writing furnishing as much detail as is available.

### 7.2 REQUEST FOR EXTENSION

The Contractor agrees to supply, as soon as such data
are available, any reasonable proofs that are required by the
RTA to make a decision on any request for extension. RTA shall
examine the request and any documents supplied by the Con-
tractor and shall determine if the Contractor is entitled to an
extension and the duration of such extension or is subject to
Liquidated Damages, or termination for default, as set forth
elsewhere in the Contract. RTA shall notify the Contractor of
the decision in writing.

It is expressly understood and agreed that the Con-
tractor shall not be entitled to damages or compensation, and
shall not be reimbursed for losses on account of delays
resulting from any cause under this provision.

### 8.0 MODIFICATIONS TO CONTRACT

## 8.1 WRITTEN CHANGE ORDERS

Oral change orders are not permitted. No change in this contract shall be made except in writing signed by an authorized representative. The Contractor shall be liable for all costs resulting from, and/c; for satisfactorily correcting, any specification change not properly ordered by written modification to the contract and signed by the RTA.

## 8.2 CHANGE ORDER PROCEDURE

Within 30 calendar days after receipt of the written change order to modify the contract, the Contractor shall submit to the RTA a detailed price and schedule proposal for the work performed. This proposal shall be accepted or modified by negotiatons between the Contractor and the RTA. At that time a detailed modification shall be executed in writing by both parties. Disagreements that cannot be resolved within negotiations shall be resolved in accordance with the contract disputes clause. Regardless of any disputes, the Contractor shall proceed with the work ordered.

## 8.3 PRICE ADJUSTMENT FOR REGULATORY CHANGES

If price adjustment is indicated, either upward or downward, it shall be negotiated between the Procuring Agency and the Contractor for changes that are mandatory as a result of legislation or regulations that are promulgated and become effective between the date of bid opening and the date of manufacture. Such price adjustment may be audited, where required.

9.0 Interest of Members of Congress. No member of or delegate to the Congress of the United States nor any member or delegate to the Illinois General Assembly shall be admitted to any share or part of this contract or to any benefit arising therefrom.

10.0 Prohibited Interest. No member officer or employee of the RTA or of any local public body with a financial interest or control in this contract during his tenure or one (1) year thereafter, shall have any interest, direct or indirect, in this contract or the proceeds thereof.

11.0 Financial Assistance Contract. This contract is subject to the provisions of the financial assistance contracts between the RTA and other sponsoring agencies which are identified in the Invitation for Bids and UMTA and IDOT.

12.0 Ineligible Contractor and Subcontractors. Any name appearing upon the Controller General of the United States' list of ineligible contractors for federally financed and assisted contraction shall not be eligible to act as a subcontractor for the Contractor pursuant to this contract. In

the event the Contractor is on the Comptroller General's list of ineligible contractors for federally financed or assisted construction, this contract may be cancelled, terminated or suspended by the RTA.

12.1 Contractor and subcontractors are required to certify that they are not included on the U.S. Comptrollers consolidated list of persons of firms currently debarred for violations of various Public Contracts incorporating labor standards provisons.

13.0 Contract Changes. Any proposed change in the contract shall be submitted to the RTA for its prior approval.

14.0 Subcontracting Limitations. The prime Contractor shall perform, on site, with his own staff, work equivalent to at least ten (10) percent of the total amount of construction work at the site. . Only pay items of the construction Contract will be used in computing the total amount of contractor's work.

15.0 Copyright and Rights in Data. This Agreement shall be subject to the U.S. Urban Mass Transportation Administration's (UMTA) policy on copyrights and rights in data, with respect to research reports and other technical materials developed with program funds. That policy, set forth in Section II B of the UMTA External Operating Manual, permits the author or grantee to copyright the work, but UMTA reserves a royalty-free nonexclusive and irrevocable license to reproduce, publish or otherwise use, and to authorize others to use the work for Government purposes.

16.0 Nondiscrimination:

"During the performance of this Contract, the Contractor agrees as follows:

(a) The Contractor will not discriminate against any employee or, applicant for employment because of race, creed, color, or national origin. The Contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment without regard to their race, religion, color, sex, or national origin. Such action shall include, but not be limited to the following: Employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The Contractor agrees to post in conspicuous places, available to employees, and applicants for employment, notices to be provided setting forth the provisions of this nondiscrimination clause.

- 32 -

(b)  The Contractor will, in all solicitations or advertise-
ments for employees by or on behalf of the contractor,
state that all qualified applicants will receive
consideration for employment without regard to race,
religion, color, sex, or national origin.

(c)  The Contractor will send to each labor union or
representative of workers with which he has a collec-
tive bargaining agreement or other contract or under-
standing, a notice to be provided advising the said
labor or workers' representatives of the Contractor's
commitments under this section, and shall post copies
of the notice in conspicuous places available to
employees and applicants for employment.

(d)  The Contractor will comply with all provisions of
Executive Order 11246 of September 24, 1965, and of
the rules, regulations, and relevant orders of the
Secretary of Labor.

(e)  The Contractor will furnish all information and re-
ports required by Executive Order 11246 of September
24, 1965, and by rules, regulations, and orders of the
Secretary of Labor, or pursuant thereto, and will
permit access to his books, records, and accounts by
the administering agency and the Secretary of Labor
for purposes of investigation to ascertain compliance
with such rules, regulations, and orders.

(f)  In the event of the Contractor's noncompliance with
the nondiscrimination clauses of this Contract or with
any of the said rules, regulations or orders, this
contract may be cancelled, terminated, or suspended in
whole or in part and the Contractor may be declared
ineligible for further Government contracts of Feder-
ally assisted construction contracts in accordance
with procedures authorized in Executive Order 11236 of
September 24, 1965, and such other sanctions may be
imposed and remedies invoked as provided in Executive
Order 11246 of September 24, 1965, or by rule,
regulation, or order, of the Secretary of Labor, or as
otherwise provided by law.

(g)  The Contractor will include the portion of the sen-
tence immediately preceding paragraph (a) and the
provisions of paragraphs (a) through (g) in every
subcontract or purchase order unless exempted by
rules, regulations or orders of the Secretary issued
pursuant to Section 204 of Executive Order 11246 of
September 24, 1965, so that provisions will be binding
upon each subcontractor or vendor. the Contractor
will take such action with respect to any subcontract
or purchase order as the administering agency may

direct as a means of enforcing such provisions, including sanctions for noncompliance: Provided, however, that in the event a Contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the administering agency, the contractor may request the United States to enter into such litigation to protect the interests of the United States.

17.0 <u>Assignment</u>: This Agreement shall be binding upon, and inure to the benefit of, the respective successors, assigns, heirs, and personal representatives of the Authority and Contractor. Any successor to Contractor's rights under this Agreement must be approved by the Authority unless the transaction is specifically authorized under federal law. Any successor will be required to accede to all of the terms, conditions and requirements of this Agreement as a condition precedent to such succession. "Assignment of any portion of the work by subcontract must by approved in advance by the RTA".

18.0 <u>Government Inspection</u>. Representative of the United States Government and of the State of Illinois shall have access to the site of construction and shall have the right to inspect all project works.

19.0 <u>PATENT INFRINGEMENT</u>

The Contractor shall defend any suit or proceeding brought against the RTA based on a claim that any equipment, or any part thereof, furnished under this contract constitutes an infringement of any patent, and the Contractor shall pay all damages and costs awarded therein, including incidental and consequential damages, against the RTA. In case said equipment, or any part thereof, is in such suit held to constitute infringement and use of said equipment or parts is enjoined, the Contractor shall, at its own expense and at its option, either procure for the RTA the right to continue using equipment or part, or replace same with non-infringing equipment, or modify it so it becomes non-infringing.

20.0 <u>DISPUTES</u>

(a) In the event Contractor disagrees with a decision of the RTA concerning any question or issue arising under contract prior to acceptance of the last unit of Equipment to be delivered under the contract, Contractor shall request arbitration by so advising the RTA in writing within ten (10) business days after receiving notice of the decision of the RTA with which it disagrees. When arbitration is requested by the Contractor, the parties shall attempt to agree upon the appointment of an impartial arbitrator within five (5) impartial arbitrators, all of whom shall be members of the National Academy of Arbitrators. Either party shall have the right to

reject one entire list and to request a submission of another panel. Thereafter, the Contractor shall strike two names, the RTA shall then strike two names, and the name of the last person remaining on the list will be designated as the arbitrator and his appointment and final decision shall be binding on both parties.

(b) It is agreed, however, that the authority of an arbitrator shall be confined to the interpretation and application of the specific provisions of the Contract Documents. He shall have no right to add to, take from, or modify any of the provisions thereof, and no issue arising out of or based upon Subparagraph D, of paragraph 15 of the general provisions of the contract shall be subject to arbitration.

(c) The cost and the expenses of arbitration shall be divided equally between the RTA and the Contractor.

(d) Pending final disposition of a dispute hereunder, the Contractor shall carry on the work unless otherwise agreed by the RTA and the Contractor in writing.

DEPARTMENT OF LABOR

OFFICE OF FEDERAL CONTRACT COMPLIANCE PROGRAMS

EQUAL EMPLOYMENT OPPORTUNITY REQUIREMENTS

NOTICE OF REQUIREMENT FOR AFFIRMATIVE ACTION TO ENSURE
EQUAL EMPLOYMENT OPPORTUNITY (EXECUTIVE ORDER 11246)

1.  The Offeror's or Bidder's attention is called to the
    "Equal Opportunity Clause" and the "Standard Federal
    Equal Employment Oppoortunity Construction Contract
    Specifications" set forth herein.

2.  The goals and timetables for minority and female
    participation, expressed in percentage terms for the
    Contractor's aggregate workforce in each trade on all
    construction work in the covered area, are as follows:

APPENDIX A

The following goals and timetables for female utilization
shall be included in all Federal and federally assisted con-
struction contracts and subcontracts in excess of $10,000. The
goals are applicable to the contractor's aggregate on-site
construction workforce whether or not part of that workforce is
performing work on a Federal or federally assisted construction
contract or subcontract.

AREA COVERED

Goals for Women apply nationwide.

AREA COVERED

Goals for Women apply nationwide.

GOALS AND TIMETABLES

| Timetable | Goals (Percent) |
|---|---|
| From Apr. 1, 1978 until Mar. 31, 1979......... | 3.1 |
| From Apr. 1, 1979 until Mar. 31, 1980......... | 5.1 |
| From Apr. 1, 1980 until Mar. 31, 1981......... | 6.9 |

APPENDIX B

Until further notice, the following goals and timetables for minority utilization shall be included in all Federal or federally assited construction contracts and subcontracts in excess of $10,000 to be performed in the respective covered areas. The goals are applicable to the contractor's aggregate on-site construction work force whether or not part of that workforce is performing work on a Federal or federally-assited construction contract or subcontract.

CHICAGO, ILL., AREA

Area covered—Cook, DuPage, Kane, Lake, McHenry, and Will Counties.

GOALS AND TIMETABLES

| Timetable | Trade | Goal (percent) |
|---|---|---|
| Until further notice | Asbestos workers ..........08.6 to 10.3 | |
| | Bricklayers ...............16.3 to 18.2 | |
| | Carpenters ................11.0 to 12.8 | |
| | Electricians ..............10.9 to 12.2 | |
| | Elevator installers .......09.6 to 11.5 | |
| | Glaziers ..................10.2 to 12.2 | |
| | Ironworkers ...............14.0 to 16.0 | |
| | Metal lathers .............10.0 to 12.0 | |
| | Painters ..................10.3 to 12.1 | |
| | Plumbers ..................09.4 to 10.9 | |
| | Pipe fitters          09.4 to 10.9 | |
| | Plasterers ................24.4 t0 25.8 | |
| | Roofers ...................18.0 to 20.0 | |
| | Sheetmetal workers .......09.5 to 11.3 | |
| | Sprinkler fitters.........08.3 to 09.9 | |
| | Operating engineers ......15.7 and above | |

These goals are a applicable to all the Contractor's construction work (whether or not it is Federal or federally assisted performed in the covered area.

The Contractor's compliance with the Executive Order and the regulations in 41 CFR Part 60-4 shall be based on its implementation of the Equal Opportunity Clause, specific affirmative action obligations required by the specifications set forth in 41 CFR 60-04.3(a), and its efforts to meet the goals established for the geographical area where the contract resulting from this solicitation is to be performed. The hours of minority and female employment and training must be substantially uniform throughout the length of the contract, and in each trade, and the contractors shall make a good faith effort to employ minorities and women evenly on each of its projects.

The transfer of minority or female employees or trainees from Contractor to Contractor or from project to project for the sole purpose of meeting the Contractor's goals shall be a violation of the contract, the Executive Order and the regulations in 41 CFR part 60-4. Compliance with the goals will be measured against the total work hours performed.

3. The Contractor shall provide written notification to the Director of the Office of Federal Contract Compliance Programs within 10 working days of award of any construction subcontract in excess of $10,000 at any tier for construction work under the contract resulting from this solicitation. The notification shall list the name, address and telephone number of the subcontractor; employer identification number; estimated dollar amount of the subcontract; estimated starting and completion dates of the subcontract; and the geographical area in which the contract is to be performed.

4. As used in this Notice, and in the contract resulting from this solicitation, the "covered area" is Chicago SMSA.

<u>Equal Oportunity Clause</u>

During the performance of this contract, the contractor agrees as follows:

(1) The contractor will not discriminate against any

employee or applicant for employment because of race, color, religion, sex, or national origin. The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, or national origin. Such action shall include, but not be limited to the following: Employment, upgrading, demotion, or transfer, recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officers setting forth the provisions of this non-discrimination clause.

(2) The contractor will, in all solicitations or advertisements for employees placed by or on behalf of the contractor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, or national origin.

(3) The contractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice to be provided by the agency contracting officer, advising the labor union or

workers' representative of the contractor's commitments **under** section 2020 of Executive Order 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(4) The **contractor** will comply with all provisions of **Executive Order** 11246 of September 24, 1965, and of the **rules,** regulations, and relevant orders of the **Secretary** of Labor.

(5) The **contractor** will furnish all information and **reports** required by Executive Order 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will **permit access** to his books, records, and accounts by **the contra**cting agency and the Secretary of Labor for **purposes of** investigation to ascertain compliance with **such rules,** regulations, and orders.

(6) In the event of the contractor's non-compliance with the nondiscrimination clauses of this contract or with any of such rules, regulations, or orders, this contract may be canceled, terminated or suspended in whole or in part and the contractor may be declared **ineligible** for further Government contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965, or by rule, regulation, or

-47-

order of the Secretary of Labor, or as otherwise provided by law.

(7) The contractor will include the provisions of paragraphs (1) through (7) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to section 204 of Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each subcontractor or vendor. The contractor will take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing such provisions including sanctions for noncompliance: Provided, however, that in the event the contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the contracting agency, the contractor may request the United States to enter into such litigation to protect the interests of the United States.

## STANDARD FEDERAL EQUAL EMPLOYMENT OPPORTUNITY CONSTRUCTION CONTRACT SPECIFICATIONS (EXECUTIVE ORDER 11246)

1. As used in these specifications:

   a. "Covered area" means the geographical area described in the solicitation from whom this contract resulted;

-48-

b. **"Director"** means Director, Office of Federal Contract Compliance Program, United States Department of Labor, or any person to whom the Director delegates authority;

c. **"Employer** identification number" means the Federal Social Security number used on the Employer's Quarterly Federal Tax Return, U.S. Treasury Department Form 941.

d. **"Minority"** includes:

   i. **Black** (all person having origin in any of the Black African racial groups not of Hispanic origin);

   ii. **Hispanic** (all persons of Mexican, Puerto Rican, Cuban, Central or South American or other Spanish Culture or origin, regardless of race);

   iii. **Asian and Pacific Islander** (all persons having origins in any of the original peoples of the Far East, Southeast Asia, the Indian Subcontinent, or the Pacific Islands); and

   iv. **American Indian or Alaskan Native** (all persons having origins in any of the original peoples of North America and maintaining identifiable tribal affiliations through membership and participation or community identification).

-49-

2. Whenever the Contractor, or any Subcontractor at any tier, subcontracts a portion of the work involving any construction trade, it shall physically include in each subcontract in excess of $10,000 the provisions of these specifications and the Notice which contains the applicable goals for minority and female participation and which is set forth in the solicitations from which this contract resulted.

3. If the Contractor is participating (pursuant to 41 CFR 60-4.5) in a Hometown Plan approved by the U.S. Department of Labor in the covered area either individually or through an association, its affirmative action obligations on all work in the Plan area (including goals and timetables) shall be in accordance with that Plan for those trades which have unions participating in the Plan. Each Contractor or Subcontractor participating in an approved Plan is individually required to comply with its obligations under the EEO clause, and to make a good faith effort to achieve each goal under the Plan in each trade in which it has employees. The overall good faith performance by other Contractors or Subcontractors toward a goal in an approved Plan does not excuse any covered Contractor's failure to take good faith efforts to achieve the Plan goals and timetables.

4. The Contractor shall implement the specific affirmative action standards provided in paragraphs 7a through p of these specifications. The goals set forth in the solicita-

tion from which this contract resulted are expressed as
percentages of the total hours of employment and training
of minority and female utilization the Contractor should
reasonably be able to achieve in each construction trade in
which it has employees in the covered area. The Contractor
is expected to make substantially uniform progress toward
its goals in each craft during the period specified.

5.  Neither the provisions of any collective bargaining agree-
ment, nor the failure by a union with whom the Contractor
has a collective bargaining agreement, to refer either
minorities or women shall excuse the Contractor's obliga-
tions under these specifications, Executive Order 11246, or
the regulations promulgated pursuant thereto.

6.  In order for the nonworking training hours of apprentices
and trainees to be counted in meeting the goals, such
apprentices and trainees must be employed by the Contractor
during the training period, and the Contractor must have
made a commitment to employ the apprentices and trainees at
the completion of their training, subject to the avail-
ability of employment opportunities. Trainees must be
trained pursuant to training programs approved by the U.S.
Department of Labor.

7.  The Contractor shall take specific affirmative actions to
ensure equal employment opportunity. The evaluation of the
Contractor's compliance with these specifications shall be

based upon its effort to achieve maximum results from its actions. The Contractor shall document these efforts fully and shall implement affirmative action steps at least as extensive as the following:

a. Ensure and maintain a working environment free of harassment, intimidation, and coercion at all sites, and in all facilities at which the Contractor's employees are assigned to work. The Contractor, where possible, will assign two or more women to each construction project. The Contractor shall specifically ensure that all foremen, superintendents, and other on-site supervisory personnel are aware of and carry out the Contractor's obligation to maintain such a working environment, with specific attention to minority or female individuals working at such sites or in such facilities.

b. Establish and maintain a current list of minority and female recruitment sources, provide written notification to minority and female recruitment sources and to community organizations when the Contractor or its unions have employment opportunities available, and maintain a record of the organizations' responses.

c. Maintain a current file of the names, addresses and telephone numbers of each minority and female off-the-street applicant and minority or female referral from a union, a recruitment source or community organization and of what action was taken with respect

to each such individual.  If such  individual was sent
to the  union  hiring hall  for referral  and  was  not
referred back to  the Contractor  by the  union  or, if
referred, not employed by the Contractor, this shall be
documented in the file with the reason  therefor, along
with whatever  additional actions  the  Contractor  may
have taken.

d.  Provide immediate written notification to  the Director
when the union or unions with which the  Contractor has
a  collective bargaining agreement has not  referred to
the Contractor a  minority person or woman sent  by the
Contractor or when the Contractor has other information
that the  union referral  process has impeded  the Con-
tractor's efforts to meet its obligations.

e.  Develop on-the-job training opportunities and/or parti-
cipate in training programs for the area which express-
ly include minorities and  women,  including upgrading
programs and apprenticeship and trainee  programs rele-
vant to  the Contractor's employment  needs, especially
those programs funded or approved by the  Department of
Labor.  The Contractor  shall provide  notice of these
programs to the sources compiled under 7b above.

f.  Disseminate the  Contractor's EEO  policy  by providing
notice of  the policy  to unions and  training programs
and  requesting  their  cooperation  in  assisting  the

Contractor in meeting its EEO obligations; by including it in any policy manual and collective bargaining agreement by publicizing it in the company newspaper, annual report, etc; by specific review of the policy with all management personnel and with all minority and female employees at least once a year; and by posting the company EEO policy on bulletin boards accessible to all employees at each location where construction work is performed.

g.  Review, at least annual, the company's EEO policy and affirmative action obligations under these specifications with all employees having any responsibility for hiring, assignment, layoff, termination or other employment decisions including specific review of these items with on-site supervisory personnel such as Superintendents, General Foremen, etc., prior to the initiation of construction work at any job site. A written record shall be made and maintained identifying the time and place of these meetings, persons attending, subject matter discussed, and disposition of the subject matter.

h.  Direct its recruitment efforts, both oral and written, to minority, female and community organizations, to

-54-

schools with minority and female students and to minority and female recruitment and training organizations serving the Contractor's recruitment area and employment needs. Not later than one month prior to the date for the acceptance of applications for apprenticeship or other training by any recruitment source, the Contractor shall send written notification to organizations such as the above, describing the openings, screening procedures, and tests to be used in the selection process.

j. Encourage present minority and female employees to recruit other minority persons and women and, where reasonable, provide after school, summer and vacation employment to minority and female youth both on the site and in other areas of a Contractor's workforce.

k. Validate all tests and other selection requirements where there is an obligation to do so under 41 CFR Part 60-3.

l. Conduct, at least annually, an inventory and evaluation at least of all minority and female personnel for promotional opportunities and encourage these employees to seek or to prepare for, through appropriate training, etc., such opportunities.

m. Ensure that seniority pratices, job classifications, work assignments and other personnel practices, do not have a discriminatory effect by continually monitoring all personnel and employment related activities to ensure that the EEO policy and the Contractor's obligations under these specifications are being carried out.

n. Ensure that facilities and company activities are nonsegregated except that separate or single-user toilet and necessary changing facilities shall be provided to assure privacy between the sexes.

o. Document and maintain a record of all solicitations of offers for subcontracts from minority and female construction contractors and suppliers, including circulation of solicitations to minority and female contractor associations and other business associations.

p. Conduct a review, at least annually, of all supervisors' adherence to and performance under the Contractor's EEO policies and affirmative action obligations.

8. Contractors are encourged to participate in voluntary associations which assist in fulfilling one or more of their affirmative action obligations (7a through p). The efforts of a contractor association, joint contractor union,

contractor-community, or other similar group of which the contractor is a member and participant, may be asserted as fulfilling any one or more of its obligations under 7a through p of these Specifications provided that the contractor actively participates in the group, makes every effort to assure that the group has a positive impact on the employment of minorities and women in the industry, ensures that the concrete benefits of the program are reflected in the Contractor's minority and female workforce participation, makes a good faith effort to meet its individual goals and timetables, and can provide access to documentation which demonstrates the effectiveness of actions taken on behalf of the Contractor. The obligation to comply, however, is the Contractor's and failure of such a group to fulfill an obligation shall not be a defense for the Contractor's noncompliance.

9. A single goal for minorities and a separate single goal for women have been established. The Contractor, however, is required to provide equal employment opportunity and to take affirmative action for all minority groups, both male and female, and all women, both minority and non-minority. Consequently, the Contractor may be in violation of the Executive Order if a particular group is employed in a substantially disparate manner (for example, even though

the Contractor has achieved its goals for women generally, the Contractor may be in violation of the Executive Order if a specific minority group of women is underutilized).

10. The Contractor shall not use the goals and timetables or affirmative action standards to discriminate against any person because of race, color, religion, sex, or national origin.

11. The Contractor shall not enter into any Subcontract with any person or firm debarred from Government contracts pursuant to Executive Order 11246.

12. The Contractor shall carry out such sanctions and penalties for violation of these specifications and of the Equal Opportunity Clause, including suspension, termination and cancellation of existing subcontracts as may be imposed or ordered pursuant to Executive Order 11246, as amended, and its implementing regulations, by the Office of Federal Contract Compliance Programs. Any Contractor who fails to carry out such sanctions and penalties shall be in violation of these specifications and Executive Order 11246, as amended.

13. The Contractor, in fulfilling its obligations under these specifications, shall implement specific affirmative action steps, at least as extensive as those standards prescribed in paragraph 7 of these specifications, so as to achieve maximum results from its efforts to ensure equal employment

opportunity. If the Contractor fails to comply with the requirements of the Executive Order, the implementing regulations or these specifications, the Director shall proceed in accordance with 41 CFR 60-4.8.

14. The Contractor shall designate a responsible official to monitor all employment related activity to ensure that the company EEO policy is being carried out, to submit reports relating to the provisions hereof as may be required by the Government and to keep records. Records shall at least include for each employee the name, address, telephone number, construction trade, union affiliation, if any, employee identification number when assigned, social security number, race, sex, status (e.g., mechanic, apprentice, trainee, helper, or laborer), dates of changes in status, hours worked per week in the indicated trade, rate of pay and locations at which the work was performed. Records shall be maintained in an easily understandable and retrievable form; however, to the degree that existing records satisfy this requirement contractors shall not be required to maintain separate records.

15. Nothing herein provided shall be construed as a limitation upon the application of other laws which establish different standards of compliance or upon the application of requirements for the hiring of local or other area residents (e.g., those under the Public Works Employment Act of 1977 and the Community Development Block Grant Program).

**Regional Transportation Authority**

300 N. State Street, Chicago, Illinois 60610
312 836-4000

REGIONAL TRANSPORTATION AUTHORITY

REGULATIONS

GOVERNING PUBLIC BIDDING

HISTORY

Adopted March 13, 1975 - Ordinance No. 75-47

Amended April 12, 1976 - Ordinance No. 76-103 (Section 3.10)

REGIONAL TRANSPORTATION AUTHORITY
REGULATIONS
GOVERNING PUBLIC BIDDING

## I.  PURPOSE

1.01  These regulations have been adopted for
the purpose of implementing Section 4.06 of the Act.

## II.  COMPETITIVE BIDDING

2.01  Purchases.  Except as otherwise provided
in these Regulations, all contracts or purchase orders for
the construction or acquisition of services or public trans-
portation facilities (other than real estate) involving a
cost of more than $5,000 shall be let by free and open
bidding, after public notice, to the lowest responsible
bidder.

2.02  Sales.  Except as otherwise provided in
these Regulations, all contracts for the disposition of
any property of the Authority or for any concession in or
lease or leasement of property of the Authority for a term
of more than one year shall be let by free and open bidding
to the highest bidder.

2.03  Exceptions.  In accordance with Section
4.06 of the Act, these Regulations do not apply to:

(a)  acquisition of repair parts, ac-
cessories, equipment or services previously
furnished or contracted for.

(b)  the immediate delivery of supplies,
material or equipment or performance of ser-
vices, provided, it shall first be determined
by the concurrence of two-thirds of the Directors
that an emergency requires immediate delivery
or supply thereof.

(c)  goods or services that are econom-
ically procurable from only one source.

(d)  contracts for the maintenance or
servicing of equipment which are made with the
manufacturers or authorized service agent of
that equipment where the maintenance or ser-
vicing can best be performed by the manufacturer
or authorized service agent or such a contract

- 2 -

would be otherwise advantageous to the Authority. The exception provided in this subparagraph (d) shall not apply to contracts for plumbing, heating, piping, refrigeration and automatic temperature control systems, ventilating and distribution systems for conditioned air, and electrical wiring.

(e) goods or services procured from another governmental agency.

(f) purchases and contracts for the use or purchase of data processing equipment and data processing systems software.

(g) the acquisition of professional or utility services. "Professional services" are services the quality and reliability of which depend in substantial part upon the individual skills, training, experience or ability of the person rendering such services.

(h) purchase of service agreements or

other contracts, purchases or sales entered
into by the Authority with any transportation
agency or unit of local government.

## III. PROCEDURES

3.01 Public Notice for Bids: Time. All proposals
to award purchase orders or contracts subject to these
Regulations shall be published at least once in a news-
paper of general circulation in the Metropolitan Region at
least ten (10) calendar days, excluding Saturdays, Sundays
and legal holidays in advance of the date announced for
the receiving and opening of bids and shall simultaneously
be posted at the principal office of the Authority.

3.02 Content of Public Notice for Bids. Adver-
tisements for bids shall describe the character of the
proposed contract or agreement in sufficient detail to
enable the bidders thereon to know what their obligations
will be, either in the advertisement itself, or by ref-
erence to detailed plans and specifications on file at
the time of the publication of the first announcement.

- 4 -

Such advertisement shall also state the date, time and place assigned for the opening of bids, and no bids shall be received at any time subsequent to the time indicated in the announcement. An extension of time may be granted for the opening of such bids upon publication in a news-paper of general circulation in the Metorpolitan Region of the date to which the bid opening has been extended. The time of the bid opening extension shall not be less than 5 days after the publication thereof, Saturdays, Sundays and legal holidays excluded.

3.03 Additional Notice. Nothing in these Regulations shall be construed to prevent the Authority from providing additional notice for bids.

3.04 Earnest Money Deposits. Cash, cashier's check, a certified check or a money order as a deposit of good faith, in a reasonable amount but not in excess of ten percent (10%) of the contract amount, may be required of each bidder by the Authority. The advertisement for bids shall specify the deposit required.

3.05 Collusion. Any agreement or collusion

- 5 -

among bidders or prospective bidders in restraint of
freedom of competition by agreement to bid a fixed price,
or otherwise, shall render the bids of such bidders void.
Each bidder shall accompany his bid with a sworn state-
ment, or otherwise swear or affirm, that he has not been
a party to any such agreement. Any disclosure made or
permitted by the Authority in advance of the opening of
bids, of the terms of the bids submitted in response to
an advertisement, shall render the proceedings void and
shall require re-advertisement. If two or more identical
bids are received under these Regulations, the Authority
shall inform the Attorney General of the State of Illinois
of such fact in writing within 30 days following the
disposition of all bids received in response to the Ad-
vertisement for bids, whether by awarding of a contract
or other action.

   3.06 Opening of Bids. All sealed bids under
these Regulations shall be publicly opened. All such
bids shall be open to public inspection.

   3.07  Records Required. Each bid received

under these Regulations shall be entered on a record
showing the name of each bidder and indicating the
successful bidder.  After award of the contract, such
record shall be open to public inspection at the offices
of the Authority.  An official copy of each awarded
purchase order or contract, together with all attachments,
assignments and written consents thereto, shall be retained
by the Authority for such period of time after termination
of the contract during which an action against the Authority
might ensue under applicable laws of limitation.  Such file
shall be open to the public.

       3.08  <u>Determining Responsible Bidders</u>.  In de-
termining the responsibility of any bidder, the Authority
may take into account other factors in addition to finan-
cial responsibility and specification compliance, such as
past records of transactions with the bidder, experience,
adequacy of equipment, special or unique skills of per-
formance, ability to complete performance within a speci-
fied time limit and other pertinent considerations.

3.09  Bonds of Bidders.  Bond may be required
of each bidder upon contracts involving amounts in excess
of $5,000 when, in the opinion of the Authority, the
public interests will be served thereby.  Such bond shall
be with sufficient sureties.  It shall be in such amount
as shall be deemed adequate (a) t insure performance of the
contract in the time and manner prescribed in the contract,
and (b) to save, indemnify, and keep harmless the Authority
against all loss, damages, claims, liabilities, judgments,
costs and expenses which may in anywise accrue against the
Authority in consequence of the granting of the contract,
or which may in anywise result therefrom.

3.10  Rejection of Bids.  Any bid, any part of
any bid, or all bids may be rejected by the Authority
for any reason.  Such rejection shall be by action of the Board.
(As amended by Ordinance No. 76-103, adopted April 12, 1976)

## IV.  CONTRACTS

4.01  Assignment of Contracts.  Contracts or
purchase orders shall not be assignmable or sublet by the
successful bidder without the prior, written authorization
of the Authority.

4.02 <u>Authorization and Execution</u>. Every con-
tract subject to these Regulations, which is described in
Sections 2.01 and 2.02 of these Regulations, to which the
Authority is a party, shall be submitted to, and authorized
by the Board before being executed by the appropriate of-
ficer of the Authority as provided by the Board.

4.03 <u>Conflict of Interest</u>. Members of the Board,
officers and employees of the Authority, their spouses,
their children, their parents, their brothers and sisters
and their children, are prohibited from having or acquir-
ing any contract or any direct pecuniary interest in any
cntract which will be wholly or partially performed by
the payment of funds or the transfer of property of the
Authority. Any firm, partnership, association or corpor-
ation from which any member of the Board, officer or
employee of the Authority is entitled to receive more
than seven and one-half percent (7-1/2%) of the total
distributable income, is prohibited from having or acquir-
ing any contract or direct pecuniary interest in any con-
tract which will be performed in whole or in part by pay-
ment of funds or the transfer of property of the Authority.

Any firm, partnership, association or corporation from
which members of the Board, officers, employees of
the Authority, their spouses, their children, their
parents, their brothers and sisters and their children,
are entitled to receive in the aggregate more than fif-
teen percent (15%) of the total distributable income, is
prohibited from having or acquiring any contract will be
performed in whole or in part by the payment of funds
or the transfer of property of the Authority.  Nothing
in this section invalidates the provisions of any bond
or other security hereto or hereafter offered for sale
or sold by or for the Authority.

      4.04  <u>Contracts Violating Regulations</u>.  Any
purchase order or contract executed in violation of these
Regulations shall be null and void as to the Authority.

V.  DEFINITIONS

      5.01  <u>Definitions</u>.  As used in these Regulations:

          (a)  "Authority"  means the Regional

- 10 -

Transportation Authority created pursuant to the Regional Transportation Authority Act.

(b)  "Board" means the Board of Directors of the Authority.

(c)  "Metropolitan Region" means all territory included within the territory of the Authority as provided in the Act, and such territory as may be annexed to the Authority.

(d)  "Act" means the Regional Transportation Authority Act.

## VI.  AMENDMENTS

6.01  Amendments.  These Regulations may be amended by the Board in accordance with Section 3.05 of the Act.

- 11 -

ILLINOIS REVISED STATUTES – Chapter 111-2/3

### 704.06. Public bidding

§ 4.06. The Board shall adopt regulations to insure that the construction or acquisition by the Authority of services or public transportation facilities (other than real estate) involving a cost of more than $5,000 and the disposition of all property of the Authority shall be after public notice and with public bidding. Such regulations may provide for exceptions to such requirements for acquisition of repair parts, accessories, equipment or services previously furnished or contracted for; for the immediate delivery of supplies, material or equipment or performance of service when it is determined by the concurrence of two-thirds of the then Directors that an emergency requires immediate delivery or supply thereof; for goods or services that are economically procurable from only one source; for contracts for the maintenance or servicing of equipment which are made with the manufacturers or authorized service agent of that equipment where the maintenance or servicing can best be performed by the manufacturer or authorized service agent or such a contract would be otherwise advantageous to the Authority, except that the exceptions in this clause shall not apply to contracts for plumbing, heating, piping, refrigeration and automatic temperature control systems, ventilating and distribution systems for conditioned air, and electrical wiring; for goods or services procured from another governmental agency; for purchases and contracts for the use or purchase of data processing equipment and data processing systems software; and for the acquisition of professional or utility services. The requirements set forth therein shall not apply to purchase of service agreements or other contracts, purchases or sales entered into by the Authority with any transportation agency or unit of local government.
P.A. 78–5, 3rd Sp.Sess., Part I, art. IV, § 4.06, eff. Dec. 12, 1973. Amended by P.A. 78–1179, § 1, eff. Aug. 29, 1974; P.A. 78–1267, § 1, eff. Dec. 30, 1974; P.A. 79–1454, § 17[77], eff. Aug. 31, 1976.

P.A. 78–1179 and P.A. 78–1267 both rewrote the second sentence which prior to amendment read:

"Such regulations may provide for exceptions to such requirements for the issuance and sale of bonds or notes of the Authority, for the acquisition of professional or utility services and for other matters for which it determines public bidding is disadvantageous."

Section 2 of P.A. 78–1179 provided:

"This amendatory Act takes effect upon its becoming a law."

P.A. 79–1454, § 17[77], the 1976 Revisory Act, provided:

"Each of the several Sections of Acts enumerated in this Section were amended by more than one Act of the 79th General Assembly, but the Public Act specified with reference to each such Section incorporated in one form the text of that Section as amended by those several amendatory Acts."

# APPENDIX   B


## Cost Estimates For Work Performed Under

## The Agreement



## APPENDIX "B" – FIXED FACILITY AGREEMENT III – CNW/RTA

GRANT NUMBER: IL-03-0073/CAP-78-110-FED    PROJECT<br>
ELEMENT NO.: A80551    RAILROAD: CNW

PROJECT DESCRIPTION: Right-of-Way rehabilitation 10 miles of rail. N. Line #1, M.P. 3.2 to 6.3. N.W. Line EBM and WBM, M.P. 36.1 to 39.1 and various crossings.

| | APPROVED FUNDING | | | |
|---|---|---|---|---|
| RTA PORTION (65.9%) | RAILROAD ACTIVITY | RTA ACTIVITY | TOTAL | ESTIMATED TOTAL PROJECT COST |
| A80551-13366004 | | | | |
| Contract Purchases | $ 82,000 | $1,318,000 | $1,400,000 | $1,450,000 |
| A80551-13366006 | | | | |
| Contract Construction | 600,000 | -0- | 600,000 | 807,000 |
| SUB-TOTAL | $ 682,000 | $1,318,000 | $2,000,000 | $2,257,000 |
| | | | | |
| RAILROAD PORTION (34.1%) | | | | |
| Purchases | $ 68,000 | $ 682,000 | $ 750,000 | $ 750,000 |
| Construction | 418,000 | -0- | 418,000 | 418,000 |
| SUB-TOTAL | $ 486,000 | $ 682,000 | $1,168,000 | $1,168,000 |
| | | | | |
| TOTAL PROJECT | $1,168,000 | $2,000,000 | $3,168,000 | $3,425,000 |

BGC/LM/er
CNW D/20A
8/25/81

## APPENDIX "B" — FIXED FACILITY AGREEMENT III — CNW/RTA

GRANT NUMBER: IL-03-0085/CAP-81-163-FED    PROJECT ELEMENT NO.:   C51009    RAILROAD:   CNW

PROJECT DESCRIPTION:   Right-of-Way Rehabilitation 60,000 ties
CNW — West, Northwest and North Lines

### APPROVED FUNDING

| RTA PORTION (64%) | RAILROAD ACTIVITY | RTA ACTIVITY | TOTAL | ESTIMATED TOTAL PROJECT COST |
|---|---|---|---|---|
| C51009-13366004 Contract Purchases | $ 154,000 | $ 810,000 | $ 964,000 | $ 964,000 |
| C51009-13366006 Contract Construction | 833,000 | -0- | 833,000 | 833,000 |
| SUB-TOTAL | $ 987,000 | $ 810,000 | $1,797,000 | $1,797,000 |
| | | | | |
| RAILROAD PORTION (36%) | | | | |
| Purchases | $ 87,000 | $ 455,000 | $ 542,000 | $ 542,000 |
| Construction | 469,000 | -0- | 469,000 | 469,000 |
| SUB-TOTAL | $ 556,000 | $ 455,000 | $1,011,000 | $1,011,000 |
| PROJECT TOTAL | $1,543,000 | $1,265,000 | $2,808,000 | $2,808,000 |

BGC/LM/er
CNW D/20A
8/25/81



## APPENDIX "B" – FIXED FACILITY AGREEMENT III – RTA/CNW

PROJECT
GRANT NUMBER: IL-03-0085/CAP-81-163-FED    ELEMENT NO.: C51010    RAILROAD: CNW

PROJECT DESCRIPTION:    Right-of-Way Rehabililitation, 500 C.L. Ballast
West, Northwest and North Lines.

| | APPROVED FUNDING | | | ESTIMATED |
| RTA PORTION (64%) | RAILROAD ACTIVITY | RTA ACTIVITY | TOTAL | TOTAL PROJECT COST |
|---|---|---|---|---|
| A80552-13366004 Contract Purchases | $ 25,000 | $ 280,000 | $ 305,000 | $ 305,000 |
| C51010-13366006 Contract Construction | 263,000 | -0- | 263,000 | 263,000 |
| SUB-TOTAL | $ 288,000 | $ 280,000 | $ 568,000 | $ 568,000 |
| RAILROAD PORTION (36%) | | | | |
| Purchases | $ -0- | $ 172,000 | $ 172,000 | $ 172,000 |
| Construction | 148,000 | -0- | 148,000 | 148,000 |
| SUB-TOTAL | $ 148,000 | $ 172,000 | $ 320,000 | $ 320,000 |
| TOTAL | $ 436,000 | $ 452,000 | $ 888,000 | $ 888,000 |

BGC/LM/er
CNW D/20A
8/25/81



APPENDIX "B" – FIXED FACILITY AGREEMENT III – RTA/CNW

GRANT NUMBER: IL-03-0073/CAP-78-110-FED    PROJECT
                                           ELEMENT NO.: A80552    RAILROAD: CNW

PROJECT DESCRIPTION: 150 Insulated Glued Joints

| RTA PORTION (60%) | APPROVED FUNDING | | | ESTIMATED TOTAL PROJECT COST |
| | RAILROAD ACTIVITY | RTA ACTIVITY | TOTAL | |
|---|---|---|---|---|
| A80552-13366004 Contract Purchases | $ 15,000 | $ 118,000 | $ 133,000 | $ 133,000 |
| A80552-13366004 Contract Construction | 67,000 | –0– | 67,000 | 67,000 |
| SUB-TOTAL | $ 82,000 | $ 118,000 | $ 200,000 | $ 200,000 |
| RAILROAD PORTION (40%) | | | | |
| Purchases | $ 2,000 | $ 87,000 | $ 89,000 | $ 89,000 |
| Construction | 45,000 | –0– | 45,000 | 45,000 |
| SUB-TOTAL | $ 47,000 | $ 87,000 | $ 134,000 | $ 134,000 |
| TOTAL | $ 129,000 | $ 205,000 | $ 334,000 | $ 334,000 |

BGC/LM/er
CNW D/20A
8/25/81

APPENDIX  C


PROJECT SIGN

## PROJECT SIGNS

1. Signs are to be cut from standard 3/4" X 4' X 8' water-proof sign grade exterior plywood with one side smooth finish, and shall meet the design standards shown in the drawing below.

2. Lettering and colors: Colors shall have a minimum life of five years.

   Top: Futura bold and Italic, white lettering on red field.
   Center: Futura bold, blue lettering on white field.
   Bottom: Futura demi-bold, white lettering on blue field.

3. Back of sign to be painted white.

4. ~~Decal to be furnished by RTA (RTA logogram)~~

5. Edges to be painted white.

6. Notify RTA for inspection before shipment.

7. Signs to have face protection for shipment.



RTA-ENGINEERING    January 31, 1979

APPENDIX   D

CURRENT FEDERAL MINIMUM WAGE RATES

STATE: Illinois
COUNTY: Cook
DECISION NUMBER: IL78-3019
Case: 1:25-cv-02439 Document #: 1-1 Filed: 03/07/25 Page 113 of 137 PageID #:176
Supers    : Decision No.: IL77-2100, dated July 8, 1977, in 42 FR 35540
DESCRIPTION OF WORK: Building (including Residential), Heavy and Highway
Construction

## DECISION NO. IL78-3019

| | Basic Hourly Rates | Fringe Benefits Payments | | | |
|---|---|---|---|---|---|
| | | H & W | Pensions | Vacation | Education and/or Appr. Tr. |
| ASBESTOS WORKERS | $13.11 | .01 | .72 | | .18 |
| BOILERMAKERS | 11.30 | .951.40 | 1.00 | 5% | .03 |
| BRICKLAYERS & STONEMASONS | 11.21 | .80 | .75 | | .05 |
| CARPENTERS: | | | | | |
| Building, Heavy & Highway | | | | | |
| Carpenters & Soft Floor Layers | 10.55 | .70 | .90 | | .06 |
| Millwrights & Flledrivermen | 10.55 | .70 | .80 | | .06 |
| CEMENT MASONS: | | | | | |
| Building | 10.50 | .95 | .85 | | .05 |
| Heavy & Highway | 10.05 | .82 | .85 | | .05 |
| ELECTRICIANS | 11.75 | 8.24% | 9.63% | .00 | .80% |
| ELEVATOR CONSTRUCTORS: | | | | | |
| Constructors | 11.455 | .745 | .36 | 9tb | .075 |
| Helpers | 70%JR | .745 | .36 | 8tb | .075 |
| Helpers (Prob.) | 50%JR | | | | |
| GLAZIERS | 11.23 | .80 | .79 | | .01 |
| IRONWORKERS: | | | | | |
| Metal Fence Erector | 11.60 | .65 | .805 | | .10 |
| Structural & Reinforcing | 11.80 | 1.14 | 1.13 | | .07 |
| Ornamental | 11.60 | .65 | .805 | | .10 |
| Electric & Machinery Movers | 9.60 | .65 | 1.515 | 1.20 | .15 |
| Red Book Fence Erector | 8.61 | .65 | .805 | | .10 |
| LATHERS | 11.01 | .50 | .445 | | .04 |
| LINE CONSTRUCTION: | | | | | |
| Linemen | 11.80 | .5% | .6% | 8.50% | 4% |
| Groundmen | 9.05 | .5% | .6% | 8.50% | 4% |
| MARBLE SETTERS | 11.05 | .80 | | | |
| MARBLE SETTERS' FINISHERS & POLISHER | 9.00 | .62 | | .33 | |
| PAINTERS: | | | | | |
| Brush, Decorators, Paperhangers & Tapers | 9.63 | .375 | .43 | | .013 |
| PLASTERERS | 10.37 | .60 | .92 | | .045 |
| PIPEFITTERS | 11.90 | .80 | 1.00 | | .02 |
| PLUMBERS | 11.92 | .75 | .75 | | .10 |
| ROOFERS, CAULKERS & CLEANERS | 11.10 | .95 | .05 | | |

| | Basic Hourly Rates | Fringe Benefits Payments | | | |
|---|---|---|---|---|---|
| | | H & W | Pensions | Vacation | Education and/or Appr. Tr. |
| ROOFERS: | | | | | |
| Composition & Waterproofers | $11.50 | 1.06 | .05 | | .05 |
| Slate & Tile | 11.69 | 1.06 | .50 | | .01 |
| SHEET METAL WORKERS | 11.80 | .55 | .57 | .25 | .05 |
| SPRINKLER FITTERS | 11.75 | .75 | .90 | | .15 |
| SURVEY CREW: | | | | | |
| Layout Technician | 11.30 | .80 | .75 | | |
| Instrument Man | 9.50 | .80 | .75 | | |
| Rodman | 7.71 | .80 | .75 | | |
| TERRAZZO WORKERS | 8.95 | .10 | .10 | | |
| TILE SETTERS | 10.05 | .415 | .45625 | | |
| TILE SETTERS' FINISHERS | 8.10 | 42.45 | 43.40 | | |
| TRUCK DRIVERS: | | | | | |
| Building & Residential | | | | | |
| 2-3 Axle Trucks | 9.00 | <26.00 | 30.00 | | |
| 4 Axle Trucks | 9.93 | <16.00 | 30.00 | | |
| 5 Axle Trucks | 10.15 | <16.00 | 10.00 | | |
| 6 Axle Trucks | 10.35 | <16.00 | 10.00 | | |
| Heavy & Highway | | | | | |
| 2-3 Axle Trucks | 9.30 | .75 | .65 | | |
| 4 Axle Trucks | 9.55 | .75 | .65 | | |
| 5 Axle Trucks | 9.75 | .75 | .65 | | |
| 6 Axle Trucks | 9.95 | .75 | .65 | | |
| WELL DRILLERS: | | | | | |
| Driller, Pump Installer, Welder & Mechanic | 8.75 | .50 | .50 | e | |
| Tool Dresser, Helper | 8.10 | .50 | .50 | e | |

PAID HOLIDAYS: (WHERE APPLICABLE)
A-New Year's Day; B-Memorial Day; C-Independence Day; D-Labor Day;
E-Thanksgiving Day; F-Day after Thanksgiving; G-Christmas Day

FOOTNOTES:
a.   7 Paid Holidays A through G
b.   Employer contributes 8% of regular hourly rate to vacation pay credit
     for employee who has worked in business more than 5 years; Employer
     contributes 6% of regular hourly rate to vacation pay credit for
     employee who has worked in business less than 5 years.
c.   Per week per employee.
d.   Per Day
e.   6 Paid Holidays; New Years Day; Memorial Day; Independence Day; Labor
     Day; Thanksgiving Day; Christmas Day.

NOTICES                                                                                           113

| Basic Hourly Rates | Fringe Benefits Payments | | | |
|---|---|---|---|---|
| | H & W | Pension | Vacation | Education and/or Appr. Tr. |
| $ 7.01 | .37 | 1.10 | | |
| 8.61 | .37 | 1.10 | | |
| 8.51 | .37 | 1.10 | | |
| 3.07 | | | | |
| 3.51 | | | | |
| 6.03 | | | | |
| 5.46 | | | | |

DECISION NO. ILZR-7017

UNPACKING LABORERS
Licensed Laborers
Sidwalk, Wrecker, Burners,
Air Compressors,
Jackobrock or High Hog

LANDSCAPE WORK
Landscape Planting
Maintenance Man
Truck Driver — Tractor Trailer
(1 Axle of more) and Equipment
Operator
Truck Driver — 2 Axle

ILL-9-LAB-1-2-3

| Basic Hourly Rates | Fringe Benefits Payments | | | |
|---|---|---|---|---|
| | H & W | Pension | Vacation | Education and/or Appr. Tr. |
| $ 8.55 | .37 | 1.10 | | |
| 8.635 | .37 | 1.10 | | |
| 8.65 | .37 | 1.10 | | |
| 8.70 | .37 | 1.10 | | |
| 8.75 | .37 | 1.10 | | |
| 8.775 | .37 | 1.10 | | |
| 8.80 | .37 | 1.10 | | |
| 8.87 | .37 | 1.10 | | |
| 8.90 | .37 | 1.10 | | |
| 9.00 | .37 | 1.10 | | |
| 9.175 | .37 | 1.10 | | |

DECISION NO. ILZR-7017

LABORERS:
CLASS 1
Common Laborers, Plasterer
Laborers, Pumps for Dewatering
& other Unclassified Laborers
CLASS 2
Cement Gun Laborers
CLASS 3
Scaffold Laborers & Chimney
Laborers over 40'
CLASS 4
Windlass & Cement Gun Nozzle
Laborers — Gunnite
CLASS 5
Stone Handlers & Derrickmen
CLASS 6
Jackhammermen
CLASS 7
Concrete Vibrator, Plumbers'
Laborer & Chain Saw Operator
CLASS 8
Firebrick & Boiler Setters'
Laborers
CLASS 9
Chimney Laborers on Firebrick,
Caisson Diggers & Well Point
System Men
CLASS 10
Boiler Setter Plastic Laborers
CLASS 11
Jackhammer on Firebrick Only

11375

DECISION NO. IL7A-7019     ILL-12-FEO-1

| EVERY EQUIPMENT OPERATORS; PLUMBING & MECHANICAL CONSTRUCT Hourly Rates | Basic Hourly Rates | Fringe Benefits Payments | | | |
|---|---|---|---|---|---|
| | | H & W | Pensions | Vacation | Education and/or Appr. Tr. |
| CLASS I | 11.05 | .75 | .05 | .40 | .05 |
| CLASS II | 10.55 | .75 | .05 | .40 | .05 |
| CLASS III | 9.40 | .75 | .05 | .40 | .05 |
| CLASS IV | 8.15 | .75 | .05 | .40 | .05 |

CLASS I - Asphalt plant, asphalt spreader, auto-grad, batch plant, Denote (requires two engineers), boiler & throttle valve, caisson rigs, central redi-mix plant, combination backhoe breaker (truckmounted), conveyor, concrete paver, concrete placer, concrete tower, crane (all), derricks (all), grader, elevating, grouting machines, highlift shovels or front endloader 2½ yd. & over, hoists, one, two & three drum, hoists, two & three, drum, hoists, two tugger one floor, hydraulic boom trucks, locomotives (all), mechanic, motor patrol, pile drivers & skid rig, post-hole digger, pre-stress machine, pump cretes dual ram (requiring frequent lubrication & water), pumpcretes, squeeze cretes, - screw types pumps, Gypsum bulker & pump, rock drill (self-propelled), rock drill (truck mounted), scoopes - tractor drawn, slipform paver, straddle buggies, tournapull, tractor with boom & side boom, trenching machines

CLASS II - boiler, bulldozers, broom all power propelled, concrete mixer (3 bag & over), conveyor portables, forklift truck greaser engineer, highlift shovels or front endloaders under 2½ yd., hoists, automatic, hoists, all elevator, hoists, tugger single drum, roller, all, steam generators, stone crushers, tractor, all winch trucks with "A" frame

CLASS III - Air compressor - small 150 & under (1) to 3 not to exceed a total of 300 ft.), Air compressor - large over 150, combination - small equipment opr., generators under & over 50 KW heaters, mechanical pumps, over 3" (1 to 3 not to exceed a total of 300 ft.), pumps, well points, welding machines (3 through 5), winches, & small electric drill winches

CLASS IV - Oilers

DECISION NO. IL7A-7019

| POWER EQUIPMENT OPERATORS; SEWER, HEAVY & HIGHWAY CONST. Basic Hourly Rates | Basic Hourly Rates | Fringe Benefits Payments | | | |
|---|---|---|---|---|---|
| | | H & W | Pensions | Vacation | Education and/or Appr. Tr. |
| CLASS I | 11.10 | .75 | .05 | .40 | .05 |
| CLASS II | 10.95 | .75 | .05 | .40 | .05 |
| CLASS III | 10.70 | .75 | .05 | .40 | .05 |
| CLASS IV | 9.10 | .75 | .05 | .40 | .05 |
| CLASS V | 8.10 | .75 | .05 | .40 | .05 |

CLASS I - Asphlot plant, asphalt heater & planer combination, asphalt spreader, autograde, belt loader, clamson rigs, central redimix plant, concrete breaker (truck mounted), concrete conveyor, concrete paver over 27E cu. ft., concrete placers, concrete tube float, cranes, all attachments, cranes, Linden, Peco & machines of alike nature, derricks, traveling, dredges, euclid loader, elevating type, gradall, & mechanics of a like nature, derricks, all derrick boats, derricks, traveling, dredges, euclid loader, elevating type gradall, and mechanics of a like nature, I cu. yd. & over, mucking machine, under 1 cu. yd., piledrivers & skid rig, pre-stress machine, pump cretes dual ram (requiring frequent lubrication & water), rock drill crane type, slip form paver, straddle buggies, tractor w/boom tractairs w/attachments, trenchingmachine, underground boring 1/or mining machine under 5 ft., wheel exactor widener (Apsco)

CLASS II - Mechanic-welder, batch plant, bituminous mixer, bulldozer, combination backhoe front andloader machine, concrete breaker or hydro-harrer, concrete grinding machine, concrete mixer or paver 73 Series to & including 27 cu. ft., concrete spreader, concrete curing machine, burlap machine, belting machine & cealing machine, finishing machine, concrete grader, motor patrol auto patrol, form grader, pull grader, subgrader, highlift shovels or front endloader, hydraulic boom truck (all attachments), locomotives, dinky, pump cretes, Squeeze cretes, screw type pumps Gypsum bulker & pump, rock drill (self-propelled), roto-tiller, seaman, etc. self-propelled scoops, tractor drawn, self-propelled compactor, spreader, chipstone, etc., scraper, tank car heater, tractor, push, pulling sheeps foot, disc., compactor, etc. tug boats

NOTICES

DECISION NO. 1  -2019

POWER EQUIPMENT OPERATORS (CONT'D)

CLASS III - Boilers, boiler & throttle valve, brooms, all power propelled,
central supply tender, compressor throttle valve, concrete mixer ( 2 bags &
over) conveyor, portable, fireman on boiler, forklift trucks, greaser
engineer, grouting machine hoists, automatic, hoists, all elevators, hoists,
tuggers, single drum, jeep diggers, pipe power saw, concrete, power-driven,
saw mills, rollers, all, steam generators, stone crushers, stump machine,
winch truck with "A" frame, work boats, tampers, form motor driven

CLASS IV - Air Compressors, all, generators, heaters, mechanical, light plants,
all (1 through 5), pumps, all, pumps well points, tractaire, welding machines
( 1 through 6)

CLASS V - Oilers

STATE: Illinois

COUNTIES: Boone, DeKalb, DuPage, Kane, Kendall, Lake, McHenry and Will

DECISION NUMBER: ILLB-3042
Supersedes Decision No. ILB-3141 dated October 10, 1976, in 41 FR 4733)
DESCRIPTION OF WORK: Heavy and Highway Construction

ILL-III-1

| | Basic Hourly Rates | Fringe Benefits Payments | | | |
|---|---|---|---|---|---|
| | | H & W | Pensions | Vacation | Education and/or Appr. Tr. |
| CARPENTERS: | | | | | |
| Carpenters | | | | | |
| DuPage & Lake Cos. | $10.53 | .78 | .80 | | .06 |
| Will County | 11.43 | .70 | .35 | | |
| Remainder of Counties | 11.13 | .65 | .67 | | .01 |
| Piledrivermen | | | | | |
| DuPage & Lake Cos. | 10.53 | .78 | .80 | | .06 |
| Will County | 11.43 | .70 | .85 | | |
| Remainder of Counties | 11.38 | .65 | .61 | | .01 |
| CEMENT MASONS: | | | | | |
| Boone County | 10.48 | .40 | .43 | | |
| DeKalb County | 10.83 | .30 | | | |
| DuPage County | 10.70 | .68 | .70 | | .04 |
| Kane, Kendall and McHenry Cos. | 11.60 | .65 | .70 | | |
| Lake County | 11.35 | .75 | .73 | | .03 |
| Will County. | 11.02 | .65 | 1.30 | | .05 |
| ELECTRICIANS: | | | | | |
| Boone and DeKalb Counties | 11.65 | .50 | 3½%.40 | | 47 |
| DuPage County | 11.50 | 4% | 9% | 8% | .5% |
| Kendall County; Townships of Aurora, Sugar Grove, Big Rock, Kaneville, Blackberry, Batavia, Geneva and the City of St. Charles in Kane County; Sandwich Township in DeKalb County | 13.15 | 5% | 9% | | .5 of 1% |
| McHenry County; Kane County (that portion North of St. Charles, Geneva and Blackberry Townships) excluding St. Charles School for Boys; Townships of Manhattan, Rutland, Dundee, Burlington, Plato, Elgin, Virgil and Compton | 13.30 | 5% | 9% | | .5 of 1% |
| Lake County | 11.66 | .65 | 3%+.90 | | .03 |
| Will County | 13.43 | .50 | 3%+.50 | | .3 of 1% |
| IRONWORKERS: | | | | | |
| Boone County; DeKalb County, (excluding S.E. 1/3, including Sycamore and DeKalb) and the N.W. half of McHenry County | 13.60 | .65 | .375 | | .10 |

LABORERS

**CLASS 1**
Terrazzo Laborers, Asphalt
Laborers & Helpers, Asphalt
Plant Laborers, Dumping,
Laborers, Concrete Saw, Self-
Propelled Saw, Laser Beam

**CLASS 2**
Air Tampers & Vibrators

**CLASS 3**
Ibetat. Concrete Mixers

**CLASS 4**
Stringline & Form Setters,
Torchmen, Shooting & Cribbing
Men, Black Top Rakers, Lute-
men, Nichine Screwmen

**CLASS 5**
Chain Saw Men, Jackhammermen,
Drillmen, Concrete Breaker,
Air Spade, Dynamite Handlers
(Helpers)

**CLASS 6**
Tunnel Men, Tile Layers &
Bottom Men

**CLASS 7**
Caisson Diggers, Dynamiters

LABORERS
WALLACE & WALL COUNTIES

**CLASS 1**
Common Laborers, Plasterers
Laborers, Pumps Inc, Dewatering
Leather Unclassified Laborers

**CLASS 2**
Cement Gun Laborers

**CLASS 3**
Scaffold Laborers & Chimney
Laborers over 40'

**CLASS 4**
Utilities & Cement Gun Nozzle
Laborers - Gunnite

**CLASS 5**
Sewer Handlers & Derrickmen

**CLASS 6**
Jackhammermen

**CLASS 7**
Concrete Vibrator, Plugbarrel
Laborer & Chain Saw Operator

**CLASS 8**
Firebrick & Boiler Setters
Laborers

**CLASS 9**
Chimney Laborers on Firebrick,
Caisson Diggers & Wall Point
System Men

**CLASS 10**
Boiler Setter Plastic Laborers

**CLASS 11**
Jackhammer on Firebrick Only

| APPARATUS CRAFT BRICK & CATCH BASIN EXTENSIONS | Basic Hourly Rates | H & W | Pensions | Vacation | ..d/or Appr. Tr. |
|---|---|---|---|---|---|
| **CLASS I** General Laborers; Top Laborers & Flagmen | $8.55 | .37 | 1.10 | — | |
| **CLASS I** Second Bottom Men | 8.775 | .37 | 1.10 | | |
| **CLASS I** Well Point System-Jackhammer Men (Tampers & Vibrators) Bottom Men, Pipelayers on Drains & Pipelayer Men; All Tunnel Work | 8.90 | .37 | 1.10 | | |
| **ABORATUS STREET PAVING & GRADE SEPARATION** | | | | | |
| **CLASS I** General, Asphalt & Asphalt Plant Laborers; Flagmen | 8.55 | .37 | 1.10 | | |
| **CLASS I** Laborers on Apron, Birch Overmen & Similar Spreader Equipment, Machine Screwmen, Nitro 8 Spreaders | 8.825 | .37 | 1.10 | | |
| **CLASS I** Iron Setters; Well Points; Jackhammer (Tampers & Vibrators); Bottom Men; Pipelayers on Drains; Catch Basin Diggers & Manholes; Power Driven Concrete Saw | 8.90 | .37 | 1.10 | | |

| | Basic Hourly Rates | Pensions | Vacation | | ..d/or |
|---|---|---|---|---|---|
| CLASS I | $11.30 | .75 | .05 | .10 | .05 |
| CLASS II | 10.91 | .73 | .05 | .10 | .05 |
| CLASS III | 10.70 | .75 | .05 | .10 | .05 |
| CLASS IV | 9.10 | .75 | .05 | .10 | .05 |
| CLASS V | 8.10 | .75 | .05 | .10 | .05 |

## POWER EQUIPMENT OPERATORS:

**CLASS I** Asphalt plant, asphalt heater & planer combination, asphalt spreader, autograde, belt loader, caisson rigs, central redimix plant, concrete breaker (truck mounted), concrete conveyor, concrete paver over 27E cu. ft., concrete placer, concrete tube float, cranes, all attachments, cranes, Linden, Peco & machines of a like nature, derricks, traveling, dredges, ouslid loader, clevating type, gradell, & machines of a like nature, derricks, all, derrick boats, derricks, travelling, dredges, ouslid loader, elevating type, gradall, and machines of a like nature, grader, elevating hoists, (1,2 & 3 drum, locomotives, all, mucking machine, 1 cu. yd. & over, mucking machine, under 1 cu. yd., placertors & skid rig, pre-stress machine (requiring frequent lubrication & water), rock drill crane type, slip form paver, straddle buggies, tractor w/boom, tractaire w/ attachments, trenching machine, underground boring &/or mining machine under 5 ft., wheel exactor widener (Ipaco)

**CLASS II** Mechanic-welder, batch plant, bituminous mixer, bulldozer, combination backhoe front endloader machine, concrete breaker or hydro-hammer, concrete grinding machine, concrete mixer or paver 7S Series to & including 27 cu. ft., concrete spreader, concrete curing machine, burlap machine, belting machine & ousling machine, finishing machine, concrete grader, motor patrol auto patrol, form grader, pull grader, subgrader, highlift shovels or front endloader, hydraulic boom trucks (all attachments), locomotives, dinky, pump orotes, Squeeze cretes; screw type pumps Gypsum bulker & pump, rock drill (self-propelled), roto-tiller, scamon, etc. self-propelled scoops; tractor drawn, self-propelled compactor, spreader, chipstone, etc., scraper, tank car heater, tractor, push, pulling sheeps foot, disc, compactor, etc. tug boats

FEDERAL REGISTER, VOL. 43, NO. 58—FRIDAY, MARCH 24, 1978

NOTICES

12541

N EQUIPMENT OPERATORS (CONT'D)

3 III Boiler, boiler & throttle valve, brooms, all power propelled, ent supply tender, compressor & throttle valve, concrete mixer (2 bags & r) conveyor, portable, fireman on boiler, forklift trucks, greaser incer, grouting machine hoists, automatic, hoists, all elevators, hoists, cer, single drum, jeep diggers, pipe power saw, concrete, power-driven, nills, rollers, all, steam generators, stone crushers, stump machine, h trucks with "A" frame, work boats, tamper, form motor driven

IV Air Compressors, all, generators, heaters, mechanical, light plants, (1 through 5), pumps, all, pumps well points, tractaire, welding machines hrough 6)

Y Oilers

APPENDIX  E

UMTA LABOR PROVISIONS  -  CONSTRUCTION

Labor Provisions - Construction

(1) Minumum Wages

    (i) All mechanics and laborers employed or working upon the
site of the work, will be paid unconditionally and not
less often than once a week, and without subsequent
deduction or rebate on any account (except such payroll
deductions as are permitted by regulations issued by the
Secretary of Labor under the Copeland Act (29 CFR Part 3)),
the full amounts due at time of payment computed at wage
rates not less than those contained in the wage determina-
tion decision of the Secretary of Labor applicable to the
Project, regardless of any contractual relationship which
may be alleged to exist between the contractor and such
laborers and mechanics; and the wage determination deci-
sion shall be posted by the contractor at the site of the
work in a prominent place where it can be easily seen by
the workers. For the purpose of this clause, contribu-
tions made or costs reasonably anticipated under section
1(b)(2) of the Davis-Bacon Act on behalf of laborers or
mechanics are considered wages paid to such laborers or
mechanics, subject to the provision of 29 CFR 5.5(a)(1)(iv).
Also for the purpose of this clause, regular contributions
made or costs incurred for more than a weekly period
under plans, funds, or programs, but covering the particular
weekly period, are deemed to be constructively made or
incurred during such weekly period.

    (ii) The contracting officer shall require that any class of
laborers or mechanics, including apprentices and trainees,
which is not listed in the wage determination and which is
to be employed under the contract, shall be classified
conformably to the wage determination, and a report of
the action taken shall be sent by DOT to the Secretary
of Labor. In the event the interested parties cannot
agree on the proper classification or reclassification
of a particular class of laborers and mechanics, includ-
ing apprentices and trainees, to be used, the question
accompanied by the recommendation of the contracting
officer, shall be referred to the Secretary of Labor
for determination.

1

(iii)   The contracting officer shall require, whenever the
minimum wage rate prescribed in the contract for a
class of laborers or mechanics includes a fringe bene-
fit which is not expressed as an hourly wage and the
contractor is obligated to pay a cash equivalent of
such a fringe benefit, an hourly cash equivalent there-
of to be established. In the event the interested parties
cannot agree upon a cash equivalent of the fringe bene-
fit, the question, accompanied by the recommendation of
the contracting officer, shall be referred to the Secretary
of Labor for determination.

(iv)   The contractor may consider as part of the wages of any
laborer or mechanic the amount of any costs reasonably
anticipated in providing benefits under a plan or program
described in section 1(b)(2)(B) of the Davis-Bacon Act, or
any bona fide fringe benefits not expressly listed in
section 1(b)(2) of the Davis-Bacon Act, or otherwise not
listed in the wage determination decisions of the Secretary
of Labor which are incorporated in this contract, only when
the Secretary of Labor has found, upon the written request
of the contractor, that the applicable standards of the
Davis-Bacon Act have been met. Whenever practicable, the
contractor should request the Secretary of Labor to make
such findings before the making of the contract. In the case
of unfunded plans and programs, the Secretary of Labor may
require the contractor to set aside in a separate account
assets for the meeting of obligations undr the plan or
program.

(2)  <u>Withholding</u>

DOT may withhold or cause to be withheld from the contractor
so much of the accrued pa— · ·    or advances as may be con-
sidered necessary to pa·          rs and mechanics, including
apprentices and train-            .oyed by the contractor or any
subcontractor on the          .e full amount of wages required
by the contract. In      event of failure to pay any laborer
or mechanic, including any apprentice or trainee, employed
or working on the site of the work, all or part of the wages
required by the contract, DOT may, after written notice to
the contractor, sponsor applicant, or owner, take such action
as may be necessary to cause the suspension of any further
payment, advance, or guarantee of funds until such violations
have ceased.

2

(3) Payrolls and basic records

   (i)  Payrolls and basic records relating thereto will be maintained
during the course of the work and preserved for a period of
three years thereafter for all laborers and mechanics working
at the site of the work. Such records will contain the name
and address of each such employee, his correct classification,
rates of pay (including rates of contributions or costs antici-
pated of the types described in section 1(b)(2) of the Davis-
Bacon Act), daily and weekly number of hours worked, deductions
made and actual wages paid. Whenever the Secretary of Labor
has found under 29 CFR 5.5 (a)(1)(iv) that the wages of any
laborers or mechanics include the amount of any costs reasonably
anticipated in providing benefits under a plan or program
described in section 1(b)(2)(B) of the Davis-Bacon Act, the
contractor shall maintain records which show that the commit-
ment to provide such benefits is enforceable, that the plan or
program is financially responsible, and that the plan or program
has been communicated in writing to the laborers or mechanics
affected, and records which show the costs anticipated or the
actual cost incurred in providing such benefits.

   (ii)  The contractor will submit weekly a copy of all payrolls to the
Public Body for transmission to DOT. The copy shall be accom-
panied by a statement signed by the employer or his agent
indicating that the payrolls are correct and complete, that the
wage rates contained therein are not less than those determined
by the Secretary of Labor and that the classifications set forth
for each laborer or mechanic conform to the work he performed.
A submission of the "Weekly Statement of Compliance" which is
required under this contract and the Copeland regulations of
the Secretary of Labor (29 CFR, Part 3) and the filing with the
initial payroll or any subsequent payroll of a copy of any
findings by the Secretary of Labor under 29 CFR 5.5(a)(1)(iv)
shall satisfy this requirement. The prime contractor shall be
responsible for the submission of copies of payrolls of all
subcontractors. The contractor will make the records required
under the labor standards clauses of the contract available for
inspection by authorized representatives of DOT and the Depart-
ment of Labor, and will permit such representatives to interview
employees during working hours on the job.

(4) Apprentices and Trainees

   (A)  Apprentices. Apprentices will be permitted to work as such
only when they are registered individually, under a bona fide
apprenticeship program registered with a State apprenticeship
agency which is recognized by the Bureau of Apprenticeship and
Training, United States Department of Labor; or, if no such
recognized agency exists in a State, under a program registered

with the Bureau of Apprenticeship and Training, United
States Department of Labor. The allowable ratio of
apprentices to journeymen in any craft classification
shall not be greater than the ratio permitted to the
contractor as to his entire work force under the registered
program. Any employee listed on a payroll at an apprentice
wage rate, who is not a trainee as defined in subparagraph (B)
of this paragraph or is not registered as above, shall be
paid the wage rate determined by the Secretary of Labor for
the classification of work he actually performed. The con-
tractor or subcontractor will be required to furnish to the
contracting officer written evidence of the registration of
his program and apprentices as well as of the appropriate
ratios and wage rates, for the area of construction prior
to using any apprentices on the contract work.

(B) Trainees. Trainees will be permitted to work as such when
they are bona fide trainees employed pursuant to a program
approved by the U. S. Department of Labor, Manpower Administra-
tion, Bureau of Apprenticeship and Training, and where para-
graph 4(C) of this section is applicable.

(C) Apprentices and Trainees - Special Provisions. The following
contract clauses shall be conditions of each Federal or
federally-assisted construction contract in excess of $10,000
and the Public Body shall include the clauses, or provide for
their inclusion, in each such contract.

(1) The contractor agrees:

"(i) That he will make a diligent effort to hire for
the performance of the contract a number of
apprentices or trainees, or both, in each occupa-
tion, which bears to the average number of the
journeymen in that occupation to be employed in
the performance of the contract the applicable
ratio as determined by the Secretary of Labor;

(ii) The he will assure that 25 percent of such apprentices
or trainees in each occupation are in their first
year of training, where feasible. Feasibility here
involves a consideration of the availability of
training opportunities for first year apprentices;
the hazardous nature of the work for beginning
workers; and excessive unemployment of apprentices
in their second and subsequent years of training.

4

(iii) That during the performance of the contract he
will, to the greatest extent possible, employ
the number of apprentices or trainees necessary
to meet currently the requirements of subdivisions
(i) and (ii) of this subparagraph.

(2) The contractor agrees to maintain records of employment
of the number of apprentices and trainees, by trade,
apprentices and trainees by first year of training,
and of journeymen, and the wages paid and hours of work
of such apprentices, trainees and journeymen. The con-
tractor agrees to make these records available for in-
spection upon request of the Department of Labor and the
Department of Transportation.

(3) The contractor who claims compliance based on the criterion
stated in paragraph 1(b) of the "Criteria for Measuring
Diligent Effort" (attached to this Contract) agrees to
maintain records of employment, as described in paragraph
4(C) 2, of this section, on non-Federal and nonfederally
assisted construction work done during the performance of
this contract in the same labor market area. The contractor
agrees to make these records available for inspection upon
request of the Department of Labor and the Department of
Transportation.

(4) The contractor agrees to supply one copy of the written
notices required in accordance with paragraph 1(c)(1) of
the "Criteria for Measuring Diligent Effort" at the request
of the Department of Transportation compliance officer.
The contractor also agrees to supply at 3-month intervals
during performance of the contract and after completion of
contract performance a statement describing steps taken
toward making a diligent effort and containing a breakdown
by craft, of hours worked and wages paid for first year
apprentices and trainees, other apprentices and trainees,
and journeymen. One copy of the statement will be sent to
the Department of Transportation, and one to the Secretary
of Labor.

(5) The contractor agrees to insert in any subcontract under
this contract the requirements contained in this paragraph
(109(g) 4(c) (1), (2), (3) and (4)). The attachment
"Apprentices and Trainees - Implementation Guidelines-
Criteria for Measuring Diligent Effort" shall also be
attached to each such contract for the information of the
contractor. The term "contractor" as used in such clauses
in any subcontract shall mean the subcontractor."

(6) The provisions of this section (4(C)) shall not
apply with regard to any contract, if the Department
of Transportation finds it likely that making of the
contract with the clauses contained in this section
will prejudice the national security.

(5) Compliance with Copeland Regulations (29 CFR Part 3). The
contractor shall comply with the Copeland Regulations
(29 CFR Part 3) of the Secretary of Labor which are herein
incorporated by reference.

(6) Contract termination; debarment. A breach of clauses
(1) through (5) may be grounds for termination of
the contract, and for debarment as provided in 29 CFR 5.6.

(7) Overtime requirements. No contractor or subcontractor
contracting for any part of the contract work which may
require or involve the employment of laborers or mechanics
shall require or permit any laborer or mechanic in any
workweek in which he is employed on such work to work in
excess of eight hours in any calendar day or in excess of
forty hours in such workweek unless such laborer or mechanic
receives compensation at a rate not less than one and one-
half times his basic rate of pay for all hours worked in
excess of eight hours in any calendar day or in excess of
forty hours in such workweek, as the case may be.

(8) Violation; liability for unpaid wages; liquidated damages.
In the event of any violation of the clause set forth in
subparagraph (7), the contractor and any subcontractor
responsible therefor shall be liable to any affected employee
for his unpaid wages. In addition, such contractor and sub-
contractor shall be liable to the United States (in the case
of work done under contract for the District of Columbia or
a territory, to such District or such territory), for liqui-
dated damages. Such liquidated damages shall be computed
with respect to each individual laborer or mechanic employed
in violation of the clause set forth in subparagraph (7), in
the sum of $10 for each calendar day on which such employee
was required or permitted to work in excess of eight hours
or in excess of the standard workweek of forty hours without
payment of the overtime wages required by the clause set
forth in subparagraph (7).

(9) Withholding for liquidated damages. DOT may withhold or
cause to be withheld, from any moneys payable on account of
work performed by the contractor or subcontractor, such sums
as may administratively be determined to be necessary to
satisfy any liabilities of such contractor or subcontractor
for liquidated damages as provided in the clause set forth
in subparagraph (8).

(10)  Final Labor Summary.  The contractor and each sub-
      contractor shall furnish to the Public Body, upon the
      completion of the contract, a summary of all employment,
      indicating, for the completed project, the total hours
      worked and the total amount earned.

(11)  Final Certificate.  Upon completion of the contract, the
      contractor shall submit to the Public Body with the voucher
      for final payment for any work performed under the contract
      a certificate concerning wages and classifications for
      laborers and mechanics, including apprentices and trainees
      employed on the project, in the following form:

      The undersigned, contractor on


      _____
                    (Contract No.)

      hereby certifies that all laborers, mechanics, apprentices
      and trainees employed by him or by any subcontractor per-
      forming work under the contract on the project have been
      paid wages at rates not less than those required by the
      contract provisions, and that the work performed by each
      such laborer, mechanic, apprentice or trainee conformed
      to the classifications set forth in the contract or
      training program provisions applicable to the wage rate
      paid.

      Signature and title  _____

(12)  Notice to the Public Body of Labor Disputes.  Whenever the
      contractor has knowledge that any actual or potential labor
      dispute is delaying or threatens to delay the timely per-
      formance of this contract, the contractor shall immediately
      give notice thereof, including all relevant information with
      respect thereto, to the Public Body.

7

Disputes Clause.

(i) All disputes concerning the payment of prevailing wage rates or classifications shall be promptly reported to the Public Body for its referral to DOT for decision or, at the option of the Public Body, DOT referral to the Secretary of Labor. The decision of DOT or the Secretary of Labor as the case may be, shall be final.

(ii) All questions relating to the application or interpretation of the Copeland Act, the Contract Work Hours Standards Act, the Davis-Bacon Act, or Section 13 of the Act shall be sent to UMTA for referral to the Secretary of Labor for ruling or interpretation, and such ruling or interpretation shall be final.

Convict Labor. In connection with the performance of work under this contract the contractor agrees not to employ any person undergoing sentence of imprisonment at hard labor. This does not include convicts who are on parole or probation.

Insertion in Subcontracts. The contractor shall insert all construction subcontracts the clauses set forth in subsections (1) through (15) of this section so that all of the provisions of this section will be inserted in all construction subcontracts of any tier, and such other clauses as the Government may by appropriate instructions require.

8

APPENDIX  F

WORK  TO  BE  PERFORMED  UNDER  THE  AGREEMENT

FFA III – APPENDIX F – CNW/RTA

GRANT NO.      IL-03-0073/CAP-78-110-FED

PROJECT NOS.    A80551 & A80552

RAILROAD      CHICAGO & NORTH WESTERN

DESCRIPTION


A80551 – Right-of-Way rehabilitation – 10 miles of rail on
          the North Line – Track 1 – M.P. 3.2 to 6.3 and
          the NW Line EBM/WBM – M.P. 36.1 to 39.1 and
          various crossings.


## MATERIALS

| ITEM | QUANTITY | SPECIFICATION NO. |
|------|----------|-------------------|
| SPIKES | 609 KEGS | 77-11 |
| TIE PLATES | 66,300 | 77-18A |
| ANCHORS | 130,800 | 77-13 |
| RAIL | 10 MILES | 77-17B |
| SWITCH TIES | 29.3 MBM | 77-19B |
| TURNOUTS | 7 | 81-47 |


A80552 – Purchase 150 insulated joints.

## SPECIFICATION NO.

81-35


BGC/LM/er
CNW D/20A
8/25/81

FFA III – APPENDIX F – CNW/RTA

GRANT NO.        IL-03-0085/CAP-81-163-FED

PROJECT NOS.     C51009 & C51010

RAILROAD         CHICAGO & NORTH WESTERN

DESCRIPTION

C51009 – Right-of-Way rehabilitation – installation of
60,000 ties on the West Line (22,279), North Line
(15,446) and the Northwest Line (22,275).

MATERIAL

| ITEM | QUANTITY | SPECIFICATION NO. |
|------|----------|-------------------|
| TIES | 60,000 | 77-19A |
| SPIKES | 1,118 KEGS | 77-11 |

C51010 – Right-of-Way rehabilitation – installlation of 500
car loads of ballast on the West Line (137), North
Line (135) and Northwest Line (228).

MATERIAL

| ITEM | QUANTITY | SPECIFICATION NO. |
|------|----------|-------------------|
| BALLAST | 25,000 CY | 79-02 |

BGC/LM/er
CNW D/20A
8/25/81

APPENDIX   G


OWNERSHIP PROVISIONS

## FFA III – APPENDIX G – CNW/RTA

GRANT NO.      IL-03-0073/CAP-78-110-FED &
                IL-03-0085/CAP-81-163-FED

PROJECT NOS.   A80551, A80552, C51009, C51010

RAILROAD      CHICAGO & NORTH WESTERN

OWNERSHIP PROVISIONS

The Chicago & North Western shall own 100% of the fixed
facilities identified as A80551, A80552, C51009 and C51010
each of which is a right-of-way rehabilitation project.

BGC/LM/er
CNW D/20A
8/25/81

APPENDIX H

ALLOCATION OF COSTS

FFA III - APPENDIX H - CNW/RTA

GRANT NO.          IL-03-0073/CAP-78-110-FED &
                   IL-03-0085/CAP-81-163-FED

PROJECT NOS.       A80551, A80552, C51009 & C51010

RAILROAD           CHICAGO & NORTH WESTERN

ALLOCATION OF COSTS


   *A80551 - The Authority's portion of the costs for this
             project shall be 65.9%.  The Chicago & North
             Western's portion of the costs for this project
             shall be 34.1%.

   *A80552 - The Authority's portion of the costs for this
             project shall be 60%.  The Chicago & North
             Western's portion of the costs for this project
             shall be 40%.

   *C51009 - The Authority's portion of the costs for this
             project shall be 64%.  The Chicago & North
             Western's portion of the costs for this project
             shall be 36%.

   *C51010 - The Authority's portion of the cost for this
             project shall be 64%.  The Chicago & North
             Western's portion of the costs for this project
             shall be 36%.


   *  Allocation based on 1979 gross ton mile statistics.  Copy
      attached as Appendix H-1.


BGC/LM/er
CNW D/20A
8/25/81