Docusign Envelope ID: 7EBA2397-8CD4-4612-852B-6CC99DA20311

### UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| Commuter Rail Division of the Regional Transportation Authority, d/b/a Metra, <br><br>                          Plaintiff, <br><br> v. <br><br> Union Pacific Railroad Company, <br><br>                          Defendant. | C.A. No. 25-cv-02439 |

**Declaration of Paul W. Hughes**

I, Paul W. Hughes, declare as follows:

1. I am a partner at McDermott Will & Emery LLP and counsel for Plaintiff Commuter Rail Division of the Regional Transportation Authority (Metra) in this action. I make this declaration based on my own personal knowledge and business records reasonably available to me in my role as counsel for Metra. If called as a witness, I could and would testify competently to the matters stated herein.

2. Approximately seven weeks ago, at Metra's direction, I began undertaking efforts to ensure that Metra commuter rail service on railroad tracks owned by Union Pacific (the "UP Lines") would not be interrupted during this litigation by securing Union Pacific's agreement that Metra could continue operating on the UP Lines under status quo conditions after the expiration of the existing purchase of service agreement on June 30, 2025.

3. On April 22, 2025, I emailed a letter to Bruce Braun, outside counsel for Union Pacific, requesting "Union Pacific's agreement that, for the duration of this litigation, Metra will

1

retain access to the UP Lines on commercially reasonable terms." Attached hereto as Exhibit 1 is a true and accurate copy of this letter and subsequent correspondence.[1]

4. On April 25, 2025, Mr. Braun responded by voicemail, confirming receipt of the letter indicating that Union Pacific would respond to Metra by the end of the next week—thus, approximately, May 1 or 2.

5. On April 30, 2025, Mr. Braun sent a follow-up email stating that Union Pacific would not provide a response until "on or after May 16, 2025."

6. On May 1, 2025, I spoke with Ray Atkins, outside counsel for Union Pacific, and urged a response faster than May 16, explaining Metra's need to have certainty regarding the status of the UP Lines.

7. On May 8, 2025, I spoke again with Mr. Atkins, who informed me that Union Pacific would not reply to Metra's request until "on or around May 16" and not sooner. I made clear to Mr. Atkins during this conversation that Metra sought an agreement preserving the status quo during the pendency of the litigation—that is, at the rate of compensation Metra currently provides to Union Pacific under the PSA.

8. On May 13, 2025, Mr. Atkins advised me that Metra would hear from Union Pacific on "Monday, May 19."

9. On May 19, 2025, representatives from Union Pacific advised Metra that they would provide a response on the following day, May 20.

10. On Tuesday, May 20 at the close of business, after still not hearing from Union Pacific, I emailed a letter to Mr. Atkins reiterating Metra's demand that Union Pacific "agree that

---

[1] Each exhibit attached hereto includes page numbers added for the Court's convenience. All page references herein and in the accompanying Memorandum of Law refer to these page numbers.

2

commuter rail service may continue operating on the UP Lines on status quo terms, pending resolution of this litigation." The letter requested Union Pacific's agreement within 48 hours. *See* Ex. 1 at 2-3.

11. On Wednesday, May 21 at the close of business, Mr. Atkins emailed me a letter stating that Union Pacific "will not shut down commuter service on July 1, even if this dispute remains unresolved." *Id.* at 4. Mr. Atkins called "inaccurate" any assertion that Union Pacific "threatened to exclude Metra from its lines after June 30."

12. The letter stated that Union Pacific was separately conveying to Metra a "proposal" for an agreement. *Id.* at 5.

13. Attached hereto as Exhibit 2 is a true and accurate copy of a cover letter sent by Union Pacific to Metra on Wednesday, May 21.

14. On Thursday, May 22, 2025, I sent a letter to Mr. Atkins requesting clarification, based on statements separately made by Union Pacific to Metra that Union Pacific "will be posting the new rates" as of July 1, 2025. *See* Ex. 1 at 6-7; Ex. 2 at 1.

15. On Friday, May 23, 2025, Mr. Atkins responded that Union Pacific did not intend to post common carrier rates under 49 U.S.C. § 11101, but that "Union Pacific has conveyed to Metra a proposal" and the parties should "reach a mutually acceptable resolution." *See* Ex. 1 at 8.

16. On Tuesday, May 27, 2025, I sent Mr. Atkins a letter stating that, consistent with Union Pacific's assurance that it would not terminate commuter rail service on the UP Lines even if the dispute remains unresolved, Metra would continue to operate commuter rail service on the UP Lines after the expiration of the PSA, with or without an extension or replacement agreement. *See* Ex. 1 at 9-10. The letter confirmed that Metra would not provide compensation at the rate demanded in Union Pacific's proposed operating agreement, but that Metra would

3

provide Union Pacific compensation at the *status quo* level. *Id.* at 9. The letter requested that, if Union Pacific decided to exclude Metra from the UP Lines, it provide 30 days' notice so that Metra could seek relief from the Court. *Id.* at 10. Mr. Atkins has not responded to this letter.

17. On May 27, 2025, Metra filed an amended complaint, seeking a declaratory judgment that Union Pacific cannot, under Illinois contract law, unilaterally impose a new, commercially unreasonable rate on Metra. *See* Dkt. 37.

18. On June 2, 2025, I sent Mr. Atkins a letter requesting confirmation that Union Pacific intended to honor its recent assurance that Metra would be permitted to continue using the UP Lines, "even if this dispute remains unresolved," after Union Pacific denied Metra a routine change of service request based on the lack of an agreement in place after June 30, 2025. *See* Ex. 1 at 11-12. Mr. Atkins has not responded to this letter.

19. Attached hereto as Exhibit 3 is a true and accurate copy of a "Condition of Entry" document that Union Pacific delivered to Metra on June 4, 2025.

20. Attached hereto as Exhibit 4 is a true and accurate copy of an Agreement for Construction Fixed Facilities C40011 (the "ROW FFA").

21. Attached hereto as Exhibit 5 are true and accurate copies of 27 amendments to the ROW FFA executed on or after November 22, 2017.

22. Attached hereto as Exhibit 6 is a true and accurate copy of Agreement No. 4 for the Construction of Fixed Facilities (the "Stations FFA").

23. Attached hereto as Exhibit 7 are true and accurate copies of 15 amendments to the Stations FFA executed on or after November 22, 2017.

24. Attached hereto as Exhibit 8 is a true and accurate copy of a Memorandum of Understanding, dated April 2, 2024, between Metra and Union Pacific.

25. Attached hereto as Exhibit 9 is a true and accurate copy of *By the Numbers: McHenry County Labor Report Fall 2024*, McHenry County Workforce Network Board (2024), also available at perma.cc/SN9C-8RLT.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: June 11, 2025

Washington, DC

Signed by: Paul W. Hughes

Paul W. Hughes

5