UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| Commuter Rail Division of the Regional Transportation Authority, d/b/a Metra,<br><br>                                  Plaintiff,<br><br>v.<br><br>Union Pacific Railroad Company,<br><br>                                  Defendant. | C.A. No. 25-cv-2439 |

**JOINT STATUS REPORT**

On July 8, 2025, the Court ordered the parties to appear at a status hearing on July 16, 2025 "to discuss next steps in this case." Dkt. 66. The parties present this Joint Status Report reflecting their respective positions on appropriate next steps.

**1. Metra's position**

To preserve party and judicial resources, Metra submits that the Court should hold this matter in abeyance—or simply continue the case to a subsequent status conference—pending the Surface Transportation Board's (STB) ruling on Metra's application before the agency, which is expected by September 3, 2025. Metra proposes that the parties file a joint status report within seven days of the STB decision, providing their respective positions on how the case should proceed at that juncture. Alternatively, the Court should allow Metra to supplement its complaint to address events that occurred after Metra filed its First Amended Complaint (FAC), including Union Pacific's imposition of its Condition of Entry (COE), which Metra maintains is unlawful.

    **A. The Court should hold the case in abeyance until the STB rules on Metra's terminal trackage rights application in approximately 60 days.**

On the same date it filed this action, Metra filed an STB application seeking terminal trackage rights under 49 U.S.C. § 11102. *See* Surface Transportation Board Docket No. FD

1

36844. The statute imposes a 180-day decision timeline for the STB to complete that proceeding, meaning that a decision is expected by September 3, 2025. *See* 49 U.S.C. § 11102(d). Metra suggests that the Court hold this matter in abeyance—or simply continue this case to a subsequent status conference—pending an STB decision.

*First*, the STB's forthcoming ruling will have immediate effects on Metra's antitrust claims. As Metra has made clear, if the STB in fact has power to award Metra statutory relief (a proposition Union Pacific disputes), Metra would withdraw its essential facilities claim. *See* FAC, Dkt. 37 at ¶ 372 n.1. On the other hand, if there is not even a *possibility* of relief from the STB, then this lack of any "effective power to compel sharing" undermines Union Pacific's argument that the regulatory scheme divests this Court of authority to act. *Verizon Comms. Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 406 (2004).[1]

Union Pacific has recognized the importance of the STB decision. Explaining that "Metra has sought this [terminal access] remedy as part of this dispute" (UP Motion to Dismiss, Dkt. 41 at 12), Union Pacific has argued that an essential facilities "claim is unavailable where an existing regulatory scheme provides for access to the facility at issue" (*id.* at 13). At the preliminary injunction hearing, Union Pacific went even further, asserting that "[i]f the STB … grants the relief that Metra is requesting in that proceeding, this case will be moot." Dkt. 65 at 39:14-16. While Metra does not agree that the whole of its case will be moot, the STB decision will have a significant impact on the antitrust claims, which were not at issue in the motion for a preliminary injunction.

Because the outcome of the STB proceeding will bear immediately on the antitrust claims at issue, Metra submits that an abeyance is warranted.

---

[1] Contrary to Union Pacific's suggestion (*infra* at 9-10), the Court's decision on the preliminary injunction motion "expresse[d] no view on whether Metra's overall claims against UP are barred by ICCTA." Dkt. 64 at 10 n.11.

*Second*, holding this matter in abeyance will prevent wasteful litigation activity in the likely event that the STB's ruling affects the parties' actions, which may then necessitate additional supplementation of Metra's complaint. Union Pacific does not appear to dispute this point.[2] On the contrary, Union Pacific *agrees* that additional supplementation is needed. The only question is whether Metra should supplement its complaint *now,* even though the STB's forthcoming holding will likely produce additional developments that require yet more supplementation, or whether Metra should wait to supplement until the STB has acted so that Metra's supplemental complaint accurately reflects the state of play between the parties.

Courts often recognize that holding a matter in abeyance is wise where the resolution of an independent proceeding "may affect the future scope and necessity of litigation." *IBT/HERE Emp. Reps.' Council v. Gate Gourmet Div. Americas,* 402 F. Supp. 2d 289, 292 (D.D.C. 2005) (granting plaintiffs' motion for abeyance). *See also, e.g.*, *Sheet Metal Workers' Int'l Ass'n v. United Transp. Union,* 767 F. Supp. 2d 161, 178 (D.D.C. 2011) (similar, noting that a Court may "find it most 'efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case'" (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-864 (9th Cir. 1979))). This principle "applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of

---

[2] Union Pacific urges that the Court should "deny Metra 'the luxury of a stay in a case that they themselves brought'" (*infra* at 10), but it does not dispute that the STB's forthcoming ruling is likely to affect the parties' actions and necessitate additional supplementation of Metra's complaint—or that the short period of abeyance Metra suggests would conserve the Court's resources as well as party resources. And contrary to Union Pacific's implication, abeyance is no "luxury" for Metra—Metra desires the prompt resolution of this dispute, not the least to obtain relief from Union Pacific's unlawful and oppressive COE. Metra's suggestion of an abeyance recognizes that the most efficient—and quite possibly most prompt—route to adjudicate this dispute is to postpone Metra's supplemental complaint until *after* the STB ruling, in order to prevent wasteful litigation activity and reduce the likelihood of yet another round of supplemental pleadings and briefing on a yet renewed motion to dismiss.

3

the action before the court." *Leyva*, 593 F.2d at 863-864. The same is warranted here.

Most obviously, if the STB grants Metra terminal access, that outcome would substantially narrow the issues in this case. It likely would, for example, negate the COE, as both parties have asked the STB in that instance to enter interim conditions and compensation for Metra's use of Union Pacific's facilities in place of the COE, which in turn would directly impact Metra's contract claims.³ Additionally, this Court expressed concern during the preliminary injunction hearing as to whether action here could present any tension with the STB proceeding. A brief abeyance or continuance to await an STB decision would cure any such concern.

*Third*, holding this matter in abeyance for approximately two months will not prejudice Union Pacific. *Cf. Markel Am. Ins. Co. v. Dolan*, 787 F. Supp. 2d 776, 779-780 (N.D. Ill. 2011) (considering "whether a stay will unduly prejudice or tactically disadvantage the non-moving party"). Union Pacific urges that an abeyance pending the STB's forthcoming ruling "would allow this case to hang over the parties' attempts to negotiate a resolution" (*infra* at 10), but at the same time acknowledges that "even without abeyance" "the Court likely would not have time to engage with the merits of [the claims in this case] before the STB deadline" (*infra* at 9, 10). Union Pacific thus admits that this case will almost certainly be pending as the parties engage in negotiations over the next two months, *whether or not* the Court holds the matter in abeyance pending the STB decision. And Union Pacific cannot possibly show that it would be disadvantaged by a marginal postponement in the ultimate resolution of this case (which will

---

³ Union Pacific contends (*infra* at 8) that the STB is not authorized to impose interim terms retroactively. Metra disagrees about the scope of the STB's remedial authority, but even if Union Pacific were correct, it is far from clear that the STB could not "establish conditions and compensation for use of the facilities" (49 U.S.C. § 11102) that would effectively resolve the parties' dispute. In all, holding this matter in a brief abeyance will preclude the parties from arguing, hypothetically, about what the STB *might* do, and allow this case to be litigated against the backdrop of what the STB actually did.

4

likely entail at least one trip to the Seventh Circuit)—much less so disadvantaged as to outweigh the benefit of "simplif[ying] the issues in question [and] reduc[ing] the burden of litigation on the parties and on the court." *Markel Am. Ins. Co.*, 787 F. Supp. 2d at 779.

In all, the brief abeyance that Metra suggests is amply justified by the Court's and parties' interests in efficiency and would result in no prejudice or unfairness to Union Pacific.

**B. Alternatively, the Court should allow Metra to file a supplemental complaint.**

Alternatively, the Court should grant Metra leave to file a supplemental complaint to account for events that have transpired since Metra filed the FAC. *See* Fed. R. Civ. Proc. 15(d); *Young v. Experian Info. Sol'ns, Inc.*, 2024 WL 449973, at *3 (N.D. Ill. Feb. 6, 2024) (standard for supplementing under Rule 15(d) is "the same" as for amending under Rule 15(a), under which amendment must be allowed "unless there is a good reason … for denying leave"). Union Pacific itself stated that the dispute will be ripe if "the parties actually reach July 1 without a voluntary resolution or regulatory intervention, in which case updated operative pleadings will be required." Dkt. 41 at 2. Metra agrees that an updated complaint is in order. Days after Metra filed the FAC, Union Pacific unveiled the COE, which purports to require Metra to pay vastly escalated compensation, force Metra to indemnify Union Pacific for *its own* negligence, and impute against Metra a waiver of its right to a jury trial.

The COE is now a focal point of this dispute. It places Union Pacific in clear breach of its repeated promise under the FFA amendments to keep improvements to the UP Lines "in service and available to be used for commuter rail operations," because the improvements on the UP Lines are not available if their use is conditioned on the unilateral imposition of commercially unreasonable terms and conditions. Further, Metra maintains that, standing alone, the COE is an unlawful, unconscionable contract of adhesion that is not enforceable against Metra. Metra intends to plead the particular details of the COE, and explain why its oppressive conditions— including provisions relating to compensation, indemnification, and a purported jury trial

waiver—are commercially unreasonable and unconscionable. Metra requires supplementation of its pleadings to address these new facts and to assert appropriate claims.

Union Pacific's proposal—that Metra must provide first a proposed supplemental complaint, to determine whether Union Pacific will consent to relief that Union Pacific otherwise acknowledges is appropriate—serves no serious end. Union Pacific itself agrees that supplementation is necessary to address new facts. Metra need not go through the additional step of briefing a separate motion to request relief that obviously is warranted in these circumstances.

2. **Union Pacific's position**

Union Pacific proposes that the Court allow Metra to seek leave to file a supplemental complaint addressing the COE's enforceability, with the proposed pleading attached. Doing so will allow the parties to join issue on questions that must be resolved no matter what, efficiently teeing up those questions for the Court's resolution. As the Court knows, the COE represents the terms on which Union Pacific is willing to grant Metra access while this dispute remains pending; without the COE, Metra has no right to use Union Pacific's lines now that the PSA has expired. A timely determination of the COE's validity is thus important.

The Court should not hold this case in abeyance until the STB rules. The STB's decision cannot resolve or moot the claims in this case. And having chosen to pursue this lawsuit in parallel with the STB proceeding, Metra cannot now insist that its own case be kept in abeyance. The parties are currently engaged in negotiations to try to find a commercial resolution, and delaying the termination of this litigation would not help those efforts.

### A. Union Pacific does not oppose a supplemental pleading to address the COE.

Union Pacific does not object to the concept of an updated pleading addressing the COE's validity. As Metra notes, the COE's enforceability is now a key point in this litigation,

and Metra's operative complaint was filed before Union Pacific issued the COE. A supplemental complaint addressing new facts related to the COE would thus be appropriate.

But Union Pacific cannot consent to a proposed pleading it has not seen. Likewise, this Court should not grant Metra the right to file a hypothetical pleading that the Court cannot evaluate. Union Pacific thus proposes that Metra file a motion for leave to supplement its complaint, attaching the proposed supplemental complaint. The Court and Union Pacific can then evaluate whether Metra's proposed complaint is appropriate. If that pleading merely adds facts related to the COE, as Metra suggests, then Union Pacific anticipates consenting to its filing and then filing a motion to dismiss.

### B. The Court should not hold the case in abeyance until the STB rules.

Abeyance is unwarranted. Metra says "the STB's forthcoming ruling is likely to affect the parties' actions and necessitate additional supplementation of Metra's complaint." But as the Court knows, Union Pacific believes the STB lacks jurisdiction to grant Metra any relief because Metra is not eligible. Thus, on Union Pacific's view, the proper and likely result is that the STB dismisses or denies Metra's application. In that situation, the legal landscape will remain unchanged. Union Pacific thus submits that abeyance would delay the case's forward progress for no reason.

Beyond that—and whatever the STB does—neither this case nor the STB proceeding can decide the questions raised in the other matter. This case raises only contract and antitrust claims, while "the STB proceedings seek statutory relief and do not concern breach-of-contract or antitrust claims." TRO/PI Opinion 9 n.10 (Dkt. 64). No overlapping legal issues exist.

7

Nor will the STB proceeding moot the claims here or otherwise control their disposition.[4] Metra's existing contract claims do not seek only prospective relief. They also allege that—as of early June, when the operative complaint was filed—Union Pacific *already* had "breached its obligation[s]" under the parties' prior agreements and seek "contract damages resulting from this breach." *See* Am. Compl. ¶¶ 432–445 (Dkt. 37). An STB decision about future access rights should have no bearing on allegedly completed contract breaches and already-accrued damages.

Metra suggests that, "if the STB grants Metra terminal access," that decision "likely would … negate the COE"—presumably mooting any as-yet-unpleaded claims about the COE's validity—because "both parties have asked the STB in that instance to enter interim conditions and compensation." But that assumes the STB could impose such interim terms *retroactive* to July 1. It cannot. Congress has not expressly authorized retroactive agency action in this area. *See* 49 U.S.C. § 11102(a); *Beller v. Health & Hosp. Corp.*, 703 F.3d 388, 391 (7th Cir. 2012). And even if the agency could issue retroactive trackage-rights orders, Congress has not authorized it to override *valid and effective* contractual arrangements governing trackage access—unlike in other contexts. *Cf.* 49 U.S.C. § 11321(a) (exempting rail mergers from state contract law as necessary to carry out the merger). At a minimum, then, the STB would have to know *whether* the COE was valid so it could assess whether it could impose access terms retroactive to July 1—meaning the agency may need this Court's decision on that question.

---

[4] Metra notes that, at the TRO/PI hearing, Union Pacific's counsel said "this case will be moot" if the STB grants Metra's application. But counsel's point, in context, was merely that the STB could moot *Metra's TRO/PI motion*: "If the STB tomorrow grants the relief that Metra is requesting in that proceeding, this case will be moot *or at least the motion for preliminary injunction will be moot*." Tr. 39:16–17 (Dkt. 65) (emphasis added). The parties agree that nothing the STB can do will moot this case—which is a reason to deny abeyance.

But even if the STB could entirely "negate" the COE, abeyance would not be warranted. If the Court authorizes a supplemental pleading addressing the COE, filing that pleading and briefing a motion to dismiss will probably take most of the time between now and the early September statutory deadline. Thus, the Court likely would not have time to engage with the merits of these claims before the STB deadline anyway. In turn, if the STB actually took the COE's validity off the table—which, again, Union Pacific believes is impossible—the parties could notify the Court and no judicial resources would be wasted. The Court could simply address the other issues, which would be fully briefed. And if the COE's validity remained a live issue, it would be teed up for a timely decision. Abeyance, on the other hand, would require the parties to start from zero, further delaying the resolution of this important dispute.

Metra's antitrust claims also do not depend on the outcome in the STB. These claims both seek forward-looking relief and backward-looking damages. They allege a *present* "Violation of Antitrust Law," claiming that "Union Pacific *is* liable under Section 2" of the Sherman Act and seeking "damages for these violations." Am. Compl. ¶¶ 469–475 (emphasis added). Again, an STB decision about future access cannot resolve these claims.

In any event, even Metra's prospective antitrust claims do not depend on the outcome in the STB. Whatever the agency does, those claims are foreclosed by Congress's exclusive remedies for trackage rights. Metra admits that, if "the STB in fact has power to award Metra statutory relief," then its essential-facilities theory fails. But even if the STB cannot grant any relief, Metra's Sherman Act theories are blocked by implied antitrust immunity, ICCTA's express preclusion of other federal remedies, or both. *See* UP Mot. to Dismiss 11–15 (Dkt. 41).

Indeed, the Court already has recognized that the STB's "exclusive jurisdiction" can foreclose judicial remedies "even if [the agency] cannot act on" a specific dispute. *See* TRO/PI

9

Opinion 10. And the Court has held that "seeking to regulate the terms on which UP must … provide Metra access" is a matter "within ICCTA's preemptive [scope]." *Id.* Whatever the result before the agency, Metra cannot use the antitrust laws to end-run the congressional scheme. At most, then, an STB ruling would be an *additional* reason for dismissal. That is not grounds for delay—especially since, as already noted, the Court likely will not have a chance to dig into these issues before the STB acts even without abeyance.

Finally, Metra chose to pursue court and agency proceedings in parallel, urging that "[o]nly a Court order" can protect its interests. *See* TRO/PI Motion 6 (Dkt. 43). Metra apparently made this choice to try to maximize its leverage in the parties' commercial negotiations, which are still ongoing. Now that the Court has denied the extraordinary relief Metra requested—recognizing in the process that Metra's lead contract theory appears implausible, *see* TRO/PI Opinion 8–9—Metra seeks a stay that would allow this case to hang over the parties' attempts to negotiate a resolution. Having sued for a declaration that "Union Pacific [must] pay Metra several hundred million dollars," Am. Compl. ¶ 288, Metra cannot object to a speedy resolution.

The Court should deny Metra "the luxury of a stay in a case that they themselves brought." *See Ashenden v. Lloyd's of London*, 934 F. Supp. 992, 1000 (N.D. Ill. 1996) (denying plaintiffs' request to abstain in favor of state administrative proceedings, even though those proceedings "may ultimately resolve some of the issues presented"). If Metra prefers not to have this case go forward until it knows how the STB will rule, it is free to file a notice of voluntary dismissal without prejudice. *See* Fed. R. Civ. P. 41(a)(1)(i).

Dated: July 15, 2025 Respectfully submitted,

/s/ Paul W. Hughes /s/ Bruce R. Braun

Paul W. Hughes (*pro hac vice*)
Mary H. Schnoor (*pro hac vice*)
Emmett Witkovsky-Eldred (*pro hac vice*)
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000
phughes@mwe.com

Matthew Madden
Stephen Wu
MCDERMOTT WILL & EMERY LLP
444 West Lake Street
Chicago, IL 60606-0029
(312) 984-3273
mmadden@mwe.com

*Counsel for Commuter Rail Division of the Regional Transportation Authority, d/b/a Metra*

Bruce R. Braun
Charles K. Shafer
SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, Illinois 60603
bbraun@sidley.com

Raymond A. Atkins (*pro hac vice*)
Tobias S. Loss-Eaton (*pro hac vice*)
Ogemdi Maduike (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
202-736-8000
ratkins@sidley.com
tlosseaton@sidley.com
oge.maduike@sidley.com

*Counsel for Defendant Union Pacific Railroad Company*